[Nos. 40283, 40300.   En Banc.   January 8, 1970.]

THE STATE OF WASHINGTON, *Respondent,* v. HARRY LEE
PRATER, *Appellant.*
*In the Matter of the Application for a Writ of Habeas
Corpus of* HARRY LEE PRATER, *Petitioner,* v. JACK D.
PORTER, *as Sheriff of King County, Respondent.**

*Reported in 463 P.2d 640.

*Gustav G. Kostakos,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Steve Paul Moen,* for respondent.

ROSELLINI, J.—Appellant Harry Lee Prater appeals from the judgment and sentence entered on his conviction by jury of the crime of taking and riding in a motor vehicle without permission of the owner. He was sentenced to a maximum term of 10 years in a state penal institution.

About 8:15 p.m. on October 30, 1967, officers William J. Noon and Carl E. Ahl of the Seattle Police Department observed a 1956 Chevrolet automobile traveling at an excessive rate of speed in the 2200 block of East Terrace Street. In order to estimate the speed of the vehicle, the officers commenced following it. While pacing the vehicle, the officers checked their list of stolen vehicles and found that the license number of the vehicle was on it. Shortly thereafter, confirmation was received via the radio from police headquarters that this vehicle was still on the list. About this time, the officers stopped the vehicle and placed the occupants, the appellant and one Ron S., under arrest. They noticed that the ignition wires had been torn loose from the dashboard and were dangling.

After their arrest, the appellant, aged 17 years, and his passenger, were placed in the police car and taken to the Youth Service Center, which is the juvenile reception and detention facility for King County. This center is located about four blocks from the scene of the arrest.

A declination hearing was conducted by the Juvenile Department of the King County Superior Court in connection with a petition filed in that court, pursuant to RCW 13.04. November 22, 1967, the order declining jurisdiction was signed by the juvenile court commissioner and the appellant was then bound over to be tried as an adult by the superior court.

Before the trial, a hearing was held, under Criminal Rule for Superior Court 101.20W, RCW vol. 0, to determine the admissibility of certain statements made by the appellant

to officers Noon and Ahl shortly after his arrest and before his admittance to the Youth Service Center. While taking the appellant and his companion to the Youth Service Center, the officers questioned the youths regarding the ownership of the car which the appellant was driving. The appellant, in response to these questions, at first stated that his father was doing some work on the car, but later said he didn't know whose car it was and that he had just taken it from a parking lot.

At the pretrial hearing, the appellant contended that he was merely advised of his right to remain silent and that anything he said could be held against him. He denied that he was advised of the remaining rights enumerated in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). The state, however, disputed the appellant's contentions. Officer Noon testified that he had advised both appellant and Ron S. of all their rights pursuant to *Miranda* prior to any questioning. Officer Ahl stated he did not recall specifically the rights concerning which he advised the appellant, but stated it was his practice to advise all suspects of their Miranda rights.

After reviewing all the testimony at the pretrial hearing, the trial court entered the following findings and conclusions under CrR 101.20W (c):

## I
### THE UNDISPUTED FACTS

At the time of the defendant's arrest he was in a stolen automobile and taken from that car to the police automobile. On the way to the Youth Service Center he told the officers, "My father was doing work on the car," and a little later he said. "I didn't know whose car it was. I just got in and drove it."

## II
### THE DISPUTED FACTS

Officer Noon testified that he gave the defendant proper warnings before any statement was made by the defendant. Officer Ahl says he doesn't remember whether or not the warnings were given, that he was out of the car part of the time. The defendant says that the only warnings given him related to his right to remain silent and that anything he said could be held against him; that

he was given no warning relating to his right to have an attorney or his right to have the attorney present during interrogation. The defendant admitted that he had been arrested approximately fifteen times and that on all the other arrests he was given complete constitutional warnings.

### III
#### CONCLUSION

The statements made by the defendant to Officer Noon should be admitted, because they were made freely and voluntarily after proper warnings regarding constitutional rights, and the defendant, because of his prior fifteen arrests, was well advised of all his constitutional rights and a warning as to those rights was needless.

The conclusion of the court was based upon the testimony of the defendant:

Q. It's possible that you've been arrested 15 times, isn't it? A. Yes. Q. And on many of these occasions haven't you been confronted with an officer explaining to you what your constitutional rights are? A. Yes. Q. Officers like Officer Wagner, Officer Gagner, Officer Marion, connected with the Juvenile Boys' Unit? A. Yes. Q. As a matter of fact, you are pretty well versed, are you not, with the rights that a person accused of a crime has? A. Yes. Q. And on October 30th you had been through this process many times, had you not? A. Yes. Q. And you did in fact understand what your rights were, did you not? A. Yes. . . . Q. And on each one of those occasions have you always been advised of your constitutional rights, the right to remain silent, that any statement could be used against you, that you had a right to an attorney and that if you couldn't afford one, one would be appointed for you? A. Yes.

The trial court chose not to believe the defendant when he responded to questions of his counsel as follows:

Q. Do you understand what these rights mean? Do you actually understand them? A. Yes. Q. Did you understand that an attorney would be appointed for you prior to the time that any questions might be made to you by these officers, did you understand that? A. No. Q. You did not understand that? Why didn't you understand that? A. I didn't know nothing about lawyers. I mean Juvenile. Q. You didn't know anything about Juvenile lawyers, is that right? A. No. Q. Or attorneys that are appointed in

Juvenile Court? A. No. . . . Q. Did you know, prior to October 30th, 1967, that you could have an attorney? A. No. Q. So at the time you didn't know that an attorney could be appointed for you by the Juvenile Court, is that right? A. Right.

The appellant has never asserted that he did not know that the juvenile court might waive jurisdiction or that he might be prosecuted in superior court.

The appellant assigns error to the admission in evidence of the oral statement made by the appellant to the police that the car he had been driving was loaned to him by his father, and the later statement that he had seen the car parked and had simply driven it away.

The appellant cites the case of *Harling v. United States,* 295 F.2d 161, 163-64 (D. C. Cir. 1961), as requiring the exclusion of any damaging statement made by a juvenile to police officers prior to the time that the juvenile court waived jurisdiction.

In the *Harling* case, the juvenile had been detained approximately 12 hours before he made the incriminating statement that he had taken part in a robbery for which he was later prosecuted as a adult, the juvenile court having waived jurisdiction. The Court of Appeals for the District of Columbia said:

It is, of course, because children are, generally speaking, exempt from criminal penalties that safeguards of the criminal law, such as Rule 5 and the exclusionary Mallory rule, have no general application in juvenile proceedings. Aside from the requirements of expressly applicable statutes, the principles of "fundamental fairness" govern in fashioning procedures and remedies to serve the best interests of the child. It would offend these principles to allow admissions made by the child in the non-criminal and non-punitive setting of juvenile proceedings to be used later for the purpose of securing his criminal conviction and punishment. Such a practice would be tantamount to a breach of faith with the child, since he cannot be charged with knowledge of either his privilege against self-incrimination or the Juvenile Court's power to waive its jurisdiction and subject him to criminal penalties. Moreover, if admissions obtained in

juvenile proceedings *before* waiver of jurisdiction may be introduced in an adult proceeding *after* waiver, the juvenile proceedings are made to serve as an adjunct to and part of the adult criminal process. This would destroy the Juvenile Court's *parens patriae* relation to the child and would violate the non-criminal philosophy which underlies the Juvenile Court Act.

Noting that the evidence was in sharp conflict as to whether the juvenile had actually participated in the robbery or had been merely an innocent bystander, the court held that the evidence of his incriminating statement was highly prejudicial and required that the case be remanded for a new trial.

The *Harling* case was decided before *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967). At the time, juvenile proceedings were considered a civil matter and constitutional rights of juveniles were not considered important in the protective, rehabilitative, and "non-adversary" procedure. There was no requirement that juveniles be advised of such rights, and thus any statement given was presumably given without an intelligent waiver of such rights.

In *In re Gault, supra,* the United States Supreme Court granted to juveniles their constitutional rights, including the right to be warned that any statement made while in custody could be used against him in a court of law. *See Miranda v. Arizona, supra.*

■ The Oregon court announced in *State v. Gullings,* 244 Ore. 173, 416 P.2d 311 (1966), a rule which we think is more appropriate than that in the *Harling* case. Although *Gault* had not yet established the precedent, a perceptive court recognized the applicability of constitutional safeguards. At pp. 178-79, speaking of admissions made at the time of arrest and before the juvenile had been placed in the custody of the juvenile court, the Oregon court said:

> Presuming that federal constitutional Fifth and Sixth Amendment rights are granted, we believe that an absolute prohibition is not required so long as it is made clear to the juvenile that criminal responsibility can result and that the questioning authorities are not operating as his

friends but as his adversaries. In the present case we believe this was made abundantly clear to the defendant. The officer had been adequately trained and apparently was aware in advance that there was a possibility of a remand. His testimony indicated he was careful and specific in informing the defendant of the possible consequences.

We do not believe the two factors which were the concern of the court in *Harling* and *Edwards,* supra, require prohibiting the use in adult proceedings of all information secured by police before remand. No "principles of fundamental fairness" are offended when the information is secured in a setting that is so patently adversarial as to be understood by the child. The *parens patriae* relationship does not exist between police and child but between court and child. Police are in the business of solving transgressions against the welfare of society and the apprehension of those who are responsible therefor.

(Footnotes omitted.)

After considering the question whether a rule permitting the admission of statements given to arresting officers would adversely affect the relationship between the juvenile court and the children with whom it deals, the court concluded, at 180:

So long as information is available which meets constitutional criminal due process standards and which was not secured through the close relationship between court worker and child, the safety and security of the law-abiding public requires its use in adult criminal proceedings.

(Footnote omitted.)

We are of the opinion that such a rule affords the safeguards prescribed by *Gault,* does not threaten the integrity and proper functioning of the juvenile courts, and at the same time permits a legitimate use of evidence which is given under conditions importing trustworthiness.

The trial court found that the appellant's constitutional rights were protected and that the statements of the appellant were made freely and voluntarily after proper warning. The record abundantly supports the trial court. The

boy was 17 years old, had been given the "Miranda warnings" many times before, and did not assert that he was unaware of the possibility of superior court prosecution. The evidence supports the trial court's findings that he understood all that was said to him and that he freely waived his rights.

The appellant's conviction does not rest alone upon his admission but upon other independent and convincing evidence. The car which he was driving when he was apprehended had been reported stolen. The side window of the car had been broken. The officers noticed that the ignition wires were torn and hanging loose, indicating the car had been "hot wired." The owner of the car testified that it had been stolen. The passenger who was arrested in the car testified that he was present when the car was stolen; that the appellant came to his house with the stolen car and that he decided to go for a ride in the car.

■ The officers were taking the appellant to the juvenile center in accordance with the mandates of RCW 13.04.120[1] and 13.04.140, when the appellant gave the questioned admission. This statute does not forbid police to question a child who is suspected of committing a crime, provided the questioning does not delay the process of taking the child directly to the juvenile authorities. The constitution requires that a juvenile be advised of his rights and that he be warned of the possible consequences of an admission, but neither the constitution nor the statute forbids police to ask any questions of a child who is arrested.

■ It is urged that the new Juvenile Court Rules adopted December 31, 1968, would prohibit the gathering of information from the juvenile.

### Rule 1.1
#### Scope of Rules
These rules shall govern the procedure of all matters

---

[1]"When, in any county where a juvenile court is held, a child under the age of eighteen years is taken into custody by a parole, peace, police or probation officer, such child shall be taken directly before such court, or placed in the detention home or place under the jurisdiction of such court, or into the custody of the court probation officer: . . ."

within the jurisdiction of the Juvenile Court, including actions taken by probation officers, and shall supplement the applicable statutes.

## Rule 7.3
### WAIVER OF RIGHTS

Any right which a child has under these rules may be waived by an express waiver intelligently made by the child and his parent or custodian after they have been fully informed of the right being waived.

These rules apply to all proceedings conducted in the juvenile court, but they do not apply to police officers making inquiries which are reasonably indicated in making an arrest. This is not to imply that the police may engage in a full custodial interrogation. But it would be unrealistic to assume that an officer can properly perform his duties without asking questions.

Assuming the questioning is reasonably related to the performance of the officer's duties, he may inquire; but he must make sure that a juvenile understands the Miranda warning. If there is not an intelligent waiver of his constitutional rights, the juvenile's answers should not be used against him. Whether there is such a waiver depends on a number of factors such as the age, intelligence and experience of the juvenile. Whether a proper warning is given and whether there is an intelligent waiver is a factual matter for the court to decide in each case. The questioning of the appellant in this case was brief and properly incident to the arrest.

The appellant voluntarily gave the questioned statement after the proper warning and advice as to his rights, and it was not error to admit it into evidence.

Appellant has also submitted a pro se petition for a writ of habeas corpus which we have thoroughly reviewed. We find no merit in the contentions argued therein.

The judgment is affirmed.

HUNTER, C. J., FINLEY, WEAVER, HAMILTON, HALE, NEILL, and McGOVERN, JJ., concur.