[Nos. 292-41134-2, 293-41136-2.    Division Two.    January 20, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN NEWELL BAKER, *Appellant*.

*Paul J. Braune,* for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney, Joseph D. Mladinov, Special Counsel,* and *Eugene G. Olson, Chief Criminal Deputy,* for respondent.

PETRIE, J.—On October 19, 1968, Rebecca Gardenhire was knocked down, injured and robbed of her purse. She described her assailant as a tall young male, probably white, with a rust-colored jacket and similarly colored hair. Included in the contents of her purse were her checkbook and two Sears credit cards. Several days later the Tacoma police learned that two women had been arrested in Renton using one of Mrs. Gardenhire's credit cards. With this basic lead, the Tacoma police began an intensive investigation which produced the following information: John Baker was the son of one of these women; he fit the general description of Mrs. Gardenhire's assailant; he was living in Puyallup and intended to leave for California; he had told another party that he and one Cronk had robbed Mrs. Gardenhire.

Given the apparent exigency, the Tacoma police rushed to Puyallup and found Baker and his girl friend, Christine, outside the house. With two Puyallup officers present, they arrested both of them and learned that Cronk was inside taking a shower. Both the girl and Baker were brought inside while the police informed Cronk that he was under arrest. While waiting for Cronk to get dressed, the police

were talking to the girl in the kitchen. One of the detectives noticed a woman's purse on the counter and noted that the girl also had one. In an effort to determine whether this was the Gardenhire purse, he opened it and discovered marijuana. Baker, Cronk and Christine were then charged with possession of narcotics. At this point the police had neither arrest warrants nor search warrants.

During the search of the three at the stationhouse for inventory purposes, the other credit card of Mrs. Gardenhire was discovered in the sleeve of Cronk's sweater.

At police headquarters, Baker signed a "Statement of Rights" form which had been given him. He then confessed to both the Gardenhire robbery and possession of marijuana and signed a statement reflecting this. The juvenile court waived jurisdiction; Baker was tried as an adult and found guilty by a jury in separate trials for each offense. His appeals have been consolidated to facilitate review.

The appellant's conviction for felonious possession of narcotics—marijuana—must be reversed and dismissed by virtue of the holding in *State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970), that the Laws of 1969, Ex. Ses., ch. 256, §§ 7, 9, 10 and 11 removing marijuana from the Uniform Narcotic Drug Act, expressed the intention that its provision applied to pending actions.

Appellant's other assignments of error will be considered as they relate to the conviction of robbery.

■ Initially, appellant contends that the robbery charge should have been dismissed because trial was begun more than 60 days after the information had been filed. This is the requirement of RCW 10.46.010;[1] but this statute also provides that the court may refuse to dismiss, if good cause to the contrary is shown. Our examination of the record of pretrial hearings reveals that the delay of 4½ months was not directly attributable to either the prosecu-

[1]"If a defendant indicted or informed against for an offense, whose trial has not been postponed upon his own application, be not brought to trial within sixty days after the indictment is found or the information filed, the court shall order it to be dismissed, unless good cause to the contrary is shown."

tor or the appellant; rather it seems that the motions of the appellant presented serious and difficult questions requiring pretrial hearings and studious deliberation in order for the court to make an informed decision. However, the illness of witnesses, the inherent difficulty of setting hearings and separate trials for both Cronk and Baker on each charge, the court's obligation to deal with other assigned duties during this period, and the crowded trial calendars combined to effect this relatively short delay. We note that no prejudice has resulted to appellant from this delay. The absence of Christine as a witness was not, as he contends, due to this delay, but rather to the fact that she was a Canadian juvenile and had been returned to her home by the authorities. Indeed, on oral argument, counsel for appellant indicated that he knew of this well within the 60-day period. We conclude that the court was correct in denying the motion to dismiss.

Appellant next attacks the court's denial of his motion to suppress the confession at the robbery trial. As admitted therein, it related only to his confession of robbery, all references to the possession of marijuana having been deliberately deleted. Contending that the entrance of the house by the police to arrest Cronk and the seizure therein of the pocketbook containing marijuana was an illegal search and seizure as to himself, appellant characterizes his confession as the "fruit of the poisonous tree" and, therefore, inadmissible.

We are here concerned only with his confession to robbery. *Assuming simply for the sake of argument* that the marijuana was discovered in an illegal search and seizure, we fail to understand how this could possibly have induced or tainted appellant's confession to the totally distinct crime of robbery. The real question to be resolved is whether the confession has been obtained by exploitation of the "illegality" or, instead, by means sufficiently distinguishable to be purged of the primary taint. *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). There is nothing in the record even remotely

suggestive that Baker's confession to the robbery was obtained by exploitation of the seizure of the marijuana. But we need not speculate as to the exact mechanism which triggered Baker's confession because we are of the opinion that the search and seizure complained of was constitutionally valid.

■ The alleged search was made incident to the arrest of *Cronk* inside the house, and not as incident to the arrest of *Baker*. That the police brought Baker inside while arresting Cronk can in no way vitiate the initial validity of the search. After careful analysis of the record we are convinced that this case is clearly distinguishable on its facts from *Vale v. Louisiana*, 399 U.S. 30, 26 L. Ed. 2d 409, 90 S. Ct. 1969 (1970) and *Shipley v. California*, 395 U.S. 818, 23 L. Ed. 2d 732, 89 S. Ct. 2053 (1969). Those cases held under pre-*Chimel* standards,[2] that the warrantless search of a defendant's dwelling was not reasonably contemporaneous in place to his arrest *outside* the house, and therefore, was invalid as not incident to his arrest. But our case has precisely what those cases lacked, *i.e.,* exigent circumstances. The police herein did have probable cause to arrest Cronk, reliable information that he was inside, and a reasonable basis for fearing his departure or destruction of evidence or both. In these circumstances, the seizure of the pocketbook in plain view was in the reasonable, though mistaken, belief that it was Mrs. Gardenhire's purse, and therefore, seizable as evidence of the robbery. It follows that opening it for identification purposes was also reasonable.

■ In the alternative, appellant argues that his confession was the product of an involuntary waiver of his constitutional rights, and relies heavily on the fact that he was a juvenile. We note, first, that he signed a statement acknowledging that his constitutional rights had been given

---

[2]*Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). In this state those standards are to be applied only prospectively; *State v. Martin*, 2 Wn. App. 904, 472 P.2d 607 (1970) and are of no effect herein.

to him and he understood them. This satisfies the requirements of *In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967), that "Miranda warnings" be given to juveniles. We must now determine whether Baker voluntarily waived these constitutional rights. After an extensive hearing pursuant to CrR 101.20W, the court found that the confession had been voluntarily given. However, subsequent to that hearing, our Supreme Court in *State v. Prater*, 77 Wn.2d 526, 463 P.2d 640 (1970) examined this precise question and at page 541 outlined the factors to be considered in such a case as follows:

> Whether there is such a waiver depends on a number of factors such as the age, intelligence and experience of the juvenile. Whether a proper warning is given and whether there is an intelligent waiver is a factual matter for the court to decide in each case.

The record in this case reveals that Baker was a 17-year-old who had been in and out of several juvenile institutions and possessed at least an average intelligence. The "Miranda warnings" were given to him and the statement taken from him in an atmosphere so patently adversarial that there could have been no mistake as to the serious consequences of making a confession. We believe that the statement taken from this juvenile in these circumstances satisfies the requirements of *State v. Prater, supra,* and was, therefore, admissible. That the admission in *Prater* occurred on the way to the juvenile detention center, while the confession herein occurred a reasonably short time after the appellant's arrival at police headquarters in the County-City Building, is not a meaningful factual distinction for the purposes of determining the voluntariness of a juvenile's confession. Reviewing the chronology of events herein, the police arrived in Puyallup to arrest Baker at approximately 3 p.m. He signed the "Statement of Rights" form at 4:05 p.m. and began recital of his confession at 4:40 p.m. This is not such a delay, given the events that transpired, that one could reasonably conclude the police were seeking to delay presenting Baker to the juvenile authori-

ties; nor does this delay, when coupled with the record before us, indicate that a "grilling" or "third degree" occurred. On the contrary, it appears that Baker was present in police headquarters only a very brief period prior to confessing. We are fully aware of the concern of the law, manifest in *Prater,* that juvenile offenders be brought to the proper authorities without unnecessary delay and not be submitted to rigorous custodial interrogation. However, we are completely satisfied that nothing of the kind occurred in this case. Baker's confession was not the product of any police coercion, but rather was given knowledgeably, intentionally and voluntarily. Certainly, we are unable to say that the trial court's resolution of this factual matter, after a detailed hearing, was error.

Next, appellant contends that Cronk, accomplice-turned-state's witness, perjured himself and as a consequence, appellant was denied a fair trial. The alleged perjury went to whether or not Cronk had made a "bargain" with the state and was, therefore, certain that any self-incriminating testimony would not be used against him. We have reviewed Cronk's testimony in both cases, and the entire colloquy in Cronk's change-of-plea hearing as reproduced in both briefs; yet we are unable to find any effective support for appellant's argument.

The final point is whether or not evidence of the commission of another crime prejudicially deprived defendant of a fair trial. On cross-examination, one of the state's witnesses, Detective Perrett, was asked certain questions by counsel for appellant in an obvious effort to impeach the witness Cronk, who had not yet testified. In particular, testimony was elicited that Cronk had been arrested on a narcotics charge on the day he and Baker were apprehended. On redirect, the prosecutor asked if anyone else had been arrested at that time for possession of marijuana. To the objection of appellant's counsel, the prosecutor responded that the subject had been brought up on cross-examination. The objection was overruled and the detective

answered that John Baker, the appellant, had also been arrested at that time for possession of marijuana.

The question presented is whether or not this was proper redirect examination, considering the nature of the cross-examination. Basically, the purpose of redirect examination is to clarify matters which may tend to be confused by cross-examination and to rehabilitate the witness before the trier of fact, *State v. Stevens*, 69 Wn.2d 906, 421 P.2d 360 (1966). As to the scope of redirect examination, it is generally held that the admission or exclusion of evidence on redirect examination, which is not strictly rebuttal of testimony elicited by cross-examination, is a matter resting in the sound discretion of the trial court. *State v. Hinkley*, 52 Wn.2d 415, 325 P.2d 889 (1958). Plainly, the testimony in question was not rebuttal, and therefore, the court exercised its discretion in allowing it. This testimony neither clarified anything elicited on cross-examination nor rehabilitated either the detective or Cronk. It merely acted to put before the jury that which the court and the parties had deliberately removed from the confession for fear of prejudice—mention of the arrest for possession of marijuana.

Though we believe the court improperly exercised discretion in this instance, we are convinced that it did not result in prejudice to the appellant to a degree which denied him a fair trial. We note that appellant later testified, at which time his conviction of possession of marijuana was brought to the attention of the jury. His testimony focused entirely on a denial of the contents of his confession, and it cannot reasonably be inferred that he was induced to testify by the improperly admitted declaration of his prior arrest for possession of marijuana. In conclusion, we note that there was substantial evidence to support the jury verdict.

Judgment affirmed as to the robbery charge; reversed and remanded with instruction to dismiss the charge of possession of narcotics.

ARMSTRONG, C. J., and PEARSON, J., concur.