[No. 1096-3.   Division Three.   March 13, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES D. MATTOX, *Appellant*.

*Thomas A. Cowan* (of *Butler & Pickett*), for appellant (appointed counsel for appeal).

*Curtis Ludwig, Prosecuting Attorney*, for respondent.

GREEN, J.—Defendant, James Mattox, appeals from a jury conviction and sentence for armed robbery.

Errors are assigned to the permitted use by the prosecution for impeachment purposes of (1) a video tape of defendant, and (2) defendant's prior conviction.

At approximately 11:30 a.m. on December 20, 1973, an armed robbery occurred at a Safeway store near Kennewick. Shortly thereafter, the defendant and a companion were arrested and taken to the Kennewick police station

where defendant was advised of his constitutional rights. This procedure was recorded on video tape 1½ hours after the robbery. On January 23, 1974, defendant was tried and convicted.

During the trial, defendant raised intoxication as a defense, contending that he could not have formed the specific intent required for armed robbery.[1] He testified as to his activities leading up to the arrest, stating that 6 days prior to the robbery he was released from Franklin County jail where he had been incarcerated for almost 8 months. Defendant related that he immediately began taking drugs, "uppers and downers, speed and sleeping pills" and, in addition, consuming alcoholic beverages. These activities continued up to the time of the robbery. Defendant's testimony reveals that he recalled being in the Safeway store,

---

[1]The information charged defendant with the crime of robbery committed as follows:

[T]hen and there being armed with a deadly weapon as defined by RCW 9.95.040, to-wit: a sawed-off shotgun, wilfully, unlawfully and feloniously, by force and violence to the person of Charles Walton and by putting the said Charles Walton in fear of injury to his person and against his will, then and there did take from the person and the presence of the said Charles Walton certain personal property, to-wit: approximately $1,500.00 in lawful money of the United States, the property of Safeway Stores, in violation of RCW 9.75.010 and RCW 9.41.025.

The jury was instructed, in part:

According to the statutes of the State of Washington no act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such purpose, motive or intent.

You must discriminate between the conditions of mind merely excited by intoxicating drink or drugs, and yet capable of forming a specific intent to commit a crime, and such a prostration of the faculties as renders a man incapable of forming the intent. If an intoxicated person has the capacity to form an intent to commit the crime charged herein and conceives and executes such an intent, it is no defense that he was induced to conceive it, or to conceive it more suddenly by reason of his intoxication.

No exceptions were taken to these instructions and they become the law of the case.

that he had a sawed-off shotgun under his coat, and that at the time of his arrest he was seated in an automobile with the sawed-off shotgun in his lap and the bags of money on the floor of the car. He remembered throwing shotgun shells out of the window to the officer at the time of the arrest.

Additionally, defendant called two attorneys as witnesses, both of whom had seen him on the day of his arrest. Each testified that defendant was unable to provide any clear information about the crime with which he was charged and that he appeared sick from drugs and intoxicated. One attorney stated that he had seen the defendant between 3 and 4 o'clock on the day of the robbery, and the other stated that he had seen defendant some 45 minutes earlier.

In rebuttal, the prosecution was permitted to show the jury the video tape of defendant, which had been taken before either of the two attorneys had seen him.

First, it is contended that the video tape should not have been admitted. It is argued that the video tape was taken for the sole purpose of establishing that defendant was properly informed of his constitutional rights; therefore, it was error to admit it for a different purpose, namely, to rebut the defendant's contention that he was so intoxicated at the time of the robbery as to negate the specific intent to commit robbery. It is argued that admission for the latter purpose, *i.e.*, as substantive evidence, violated his right to assistance of counsel because it became a "critical" stage of the proceeding within the guidelines of *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967) (pretrial lineup). We disagree.

■■ In *State v. Newman*, 4 Wn. App. 588, 484 P.2d 473 (1971), the court considered the requirements for the admission of video tapes in evidence. The court held that the rule governing admissibility of photographs applies equally to the admission of video tapes. Thus, a video tape of a lineup properly authenticated was admissible in the sound discretion of the trial court. *See also Hendricks v. Swenson,*

456 F.2d 503 (8th Cir. 1972) (admission of a video tape of defendant's confession was proper); Annot., 62 A.L.R.2d 689 (1958). There is nothing in the record to indicate that the video tape was not an accurate and fair representation of the defendant at the time it was taken. The only objection relates to defendant's right to have counsel present at the time the video tape was made. We believe this contention affects the weight to be given the tape, and not its admissibility.

Assuming arguendo that defendant's contention may have been correct were the video tape offered in the prosecution's case-in-chief, its admission in rebuttal would still have been proper. In *Harris v. New York*, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971), it was held that a statement by defendant that would not have been admissible in the prosecution's case-in-chief was admissible on rebuttal to refute contrary testimony given by defendant in his defense. The same reasoning applies to the video tape involved in this case.

■ Second, defendant contends the trial court erred in permitting the prosecution to impeach his testimony by use of a prior conviction. The prosecution's inquiry was as follows:

Q How long were you in the Franklin County jail, did you say?

A About seven and a half months.

Q What was that crime?

MR. PICKETT: I'm going to object to that, Your Honor.

Q Were you convicted of a crime, so you had to spend seven months in . . .

MR. PICKETT: I would like a continuing objection to all of this—along this line.

THE COURT: He may answer.

A Yes, a misdemeanor.

Q It was a misdemeanor you were convicted of?

A Yes.

Q And what was that misdemeanor?

A Displaying a firearm.

Q Was it your testimony you left the Franklin County

jail on December what, the 14th, six days prior to the event in question here?

A  Yes.

Defendant argues that the prosecution should not have been allowed to inquire into his incarceration before a proper foundation was laid, *i.e.*, that defendant was represented by counsel or validly waived counsel at the trial resulting in the prior conviction. *State v. Paul*, 8 Wn. App. 666, 508 P.2d 1033 (1973). We disagree. The defendant on direct examination referred to his incarceration and, having done so, opened the door for inquiry as to the circumstances surrounding that incarceration.

> Having so testified on his direct examination, he cannot now challenge proper cross-examination within the scope of his direct testimony.

*State v. Paul, supra* at 668  Thus, it was proper to inquire into the nature of the crime for which defendant was incarcerated. *See State v. Frye*, 53 Wn.2d 632, 335 P.2d 594 (1959).

Affirmed.

McINTURFF, C.J., and MUNSON, J., concur.