[No. 3775-1.    Division One.    March 8, 1976.]

*In the Matter of the Welfare of* ALVIN LEWIS NOBLE.

*R. Stewart Bock* of *Seattle-King County Public Defender*, for petitioner.

*Christopher T. Bayley, Prosecuting Attorney,* and *Corydon J. Nelsen, Deputy,* for respondent.

ANDERSEN, J.—

### FACTS OF CASE

The minor who is the petitioner herein was adjudged to be a delinquent child in juvenile court. RCW 13.04.010. The hearing which resulted in that determination was held before a court commissioner. RCW 2.24.040(8). On request of counsel for petitioner, a revision hearing was thereafter held before a judge of the superior court sitting as juvenile court judge. RCW 2.24.050. Revision was denied and the case is before us on certiorari. CAROA 57(b)(3).

This case arose out of a car theft. The circumstances are as follows.

At approximately 1 o'clock on the afternoon of April 4, 1974, two officers of the Seattle Police Department in a marked police car were patrolling in a south Seattle area when they observed a red 1974 pickup truck being driven along the street. As was to develop, the vehicle had been stolen the previous day from the lot of a Seattle car dealer.

It appearing to the officers that the driver of the truck was very young to be driving, the officers proceeded to follow the vehicle. It then accelerated to a high rate of speed, made a turn and began to slow. At this point the driver brought the vehicle to an abrupt halt, opened the door and fled, as did the passengers. The truck then rolled down the street and hit a parked car.

The officers were able to apprehend the driver, petitioner herein, and two of the several passengers. They were juveniles aged 13 to 15, and the petitioner herein who had been driving was 13. The officers placed the youngsters in the patrol car where one of the officers advised them of their *Miranda*[1] rights.

The officers called for a tow truck and proceeded to fill out written accident report forms. After waiting approximately 45 minutes for the tow truck, they took the juve-

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

niles to the nearest precinct station, the south precinct at Georgetown.

At Georgetown, each of the three juveniles, including petitioner, gave a written statement after again being advised of his *Miranda* rights.

The petitioner's signed statement which had been typed by one of the officers as the petitioner made it, and which was read by petitioner before he signed it, was a confession by him that he had stolen the vehicle the previous evening. He also stated therein that at the time he was caught, he was taking the other boys, whom he said were friends of his at school, for a ride in the vehicle. The time of day typed on the statement was 1630 hours—or 4:30 p.m.

The foregoing facts were essentially uncontroverted and, indeed, some were stipulated. All three of the youngsters were eventually released directly to their parents by the police. The total time petitioner was in police custody before being turned over to his parents was estimated by the petitioner at from 3 to 5 hours. The time testified to by the officer was generally in the same time range.

The officer testified that the amount of time involved had been required because he and his partner had to do the following: follow the pickup; chase and apprehend the juvenile suspects; advise them of their rights; fill out accident report forms at the scene and await the tow truck there; transport the juveniles to Georgetown; take and type up the individual statements; fill out various forms required by the juvenile and other authorities; generally sort out who had done what in order to ascertain whether the youngsters should be taken to King County's Youth Service Center or released to their parents; call the parents and await their arrival to pick up the boys.

At the juvenile court fact-finding hearing, the testimony of the two juvenile passengers was generally in accord with their signed statements and with the petitioner's signed statement. Essentially these two youngsters testified that they had been asked to go for a ride with petitioner in a pickup truck, that petitioner was in possession of a key to

the truck and was the only one who drove the truck, and that during the course of the ride he told them the truck was stolen. They testified that when they were told it had been stolen, they unsuccessfully sought to get him to stop and let them out and that it was following that when they were chased and apprehended by the police. During the presentation of the case supporting the petition alleging delinquency, petitioner's counsel objected to introduction of his client's confession and moved to suppress it. He cited RCW 13.04.120 and JuCR 3.1, both of which require that apprehended juveniles be taken directly to juvenile court authorities unless they are released to parents, guardian, custodian or responsible relative. The court thereupon refused to admit the confession in evidence.

At the time the statement was offered and rejected, the court specifically found that there had been no physical intimidation of the petitioner or anything of that nature. The sole reason expressed by the court for its ruling was as follows.

> My finding is solely and simply that I think there was an inordinate length of time spent in the Georgetown Precinct. I think this was contrary to the spirit and intent of Juvenile Court Rule 3.1 and the statute as cited, and I think that the purpose, as I understand, of those rules was violated.[2]

After the prosecutor concluded his case, petitioner's case was presented and he testified on his own behalf. His testimony was that he had been walking home from school on the day in question when he met several boys in a red pickup truck who forced him, under threat of physical injury, to get into the truck and drive it. He further testified that he did not know the truck had been stolen although he

---

[2]It is noted that the commissioner when pressed by both counsel to further state the basis for the ruling, added "[w]ell, of course, I think [petitioner's counsel] is saying that it follows that the trustworthiness of the statement is impaired." This was by way of colloquy and was not a finding of untrustworthiness as petitioner suggests. *See State v. Johnson*, 12 Wn. App. 40, 47, 527 P.2d 1324 (1974).

assumed it had. He said he was afraid of the boys and that was why he had driven the truck.

With respect to what happened at the precinct station, it was petitioner's testimony that he was detained in a small room with blood stained walls, was not allowed to make a telephone call though he twice requested to do so, and that an arresting officer twice threatened to turn a canine unit on him if he did not admit to stealing the truck.

Then during cross-examination of the petitioner, the deputy prosecutor moved for admission of petitioner's written confession to impeach petitioner's testimony. The confession was admitted at that time over the renewed objection of petitioner's counsel.

At the conclusion of the hearing, findings of fact were entered to the effect that the petitioner had committed the offense of taking or riding in a vehicle knowing it to have been taken without the owner's permission. Based on that finding, he was adjudged to be a delinquent child. The case comes before us on certiorari to review certain aspects of the juvenile court proceeding.

## Issue

The one ultimate issue before us is whether, under the circumstances of this case, the court commissioner in juvenile court erred in admitting the minor petitioner's confession during his cross-examination, after having kept it out of evidence during presentation of the case supporting the petition alleging delinquency.

## Decision

Conclusion. The minor petitioner's signed confession, which was admitted into evidence during his cross-examination, was used for impeachment only and its admission did not constitute error.

The decision of the United States Supreme Court in *In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967) marked a dramatic change in juvenile court law. *See generally* L. Schwerin, *The Juvenile Court Revolution in Washington*, 44 Wash. L. Rev. 421 (1969). As our state Supreme Court has noted with respect to *Gault*, "the altruistic con-

cept embodied in the spirit of the 19th century juvenile court acts have run headlong into the 1968 construction of 'due process' . . ." *Sheppard v. Rhay*, 73 Wn.2d 734, 737, 440 P.2d 422 (1968).

A number of basic changes in this state's juvenile court practice have flowed from *Gault*'s abandonment of the previous parens patriae concept of juvenile courts. Some of these changes have come through case law, others by adoption of the Juvenile Court Rules (JuCR) and yet others from a combination of both. This has been particularly evident in the adjudicatory stage of a juvenile court case, termed a "fact-finding hearing," since confinement to a state institution may result from an adjudication of delinquency (although it did not in this case). *State v. Piche*, 74 Wn.2d 9, 13, 442 P.2d 632 (1968).

At a fact-finding hearing, a juvenile is entitled to such basic constitutional rights as notice of charges, right to counsel, the rights of confrontation and cross-examination and the privilege against self-incrimination. *Estes v. Hopp*, 73 Wn.2d 263, 266, 438 P.2d 205 (1968). The rules of evidence must also be followed. JuCR 4.4(a). The facts relied on to establish delinquency must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 365, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); JuCR 4.4(b). Further, a juvenile must be afforded the same protections that are given to an adult during interrogation. *In re Forest*, 76 Wn.2d 84, 86, 455 P.2d 368 (1969).

Of equal note are some changes which *Gault* has *not* wrought. It continues to be the accepted view in juvenile court that cases handled there are not criminal in nature and that "[t]he focus is on the offender and the factors which brought him before the court, rather than on his offense." *Estes v. Hopp, supra* at 266. In addition, as expressed in *Gault*:

> While due process requirements will, in some instances, introduce a degree of order and regularity to Juvenile Court proceedings to determine delinquency, and in contested cases will introduce some elements of the adversary system, nothing will require that the conception of

the kindly juvenile judge be replaced by its opposite
. . .

*In re Gault, supra* at 27.

Furthermore, jury trials are still not authorized in juvenile court. RCW 13.04.030; *McKeiver v. Pennsylvania,* 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971); *Estes v. Hopp, supra* at 265. Similarly, a juvenile who has been determined to be delinquent and committed to the custody of the appropriate state agency is not entitled to bail pending appeal. *Estes v. Hopp, supra* at 269.

In addition, *Gault* does not apply to preadjudicative and post-adjudicative functions of the juvenile court such as intake procedures, preliminary detention hearings, disposition hearings and decline hearings (also referred to as "transfer hearings"). *In re Gault, supra* at 31. In such proceedings, considerable informality is often appropriate, though these procedures too are now governed in greater or lesser detail by the Juvenile Court Rules (JuCR). *See also State v. Piche, supra; Williams v. Rhay,* 73 Wn.2d 770, 440 P.2d 427 (1968); and *Sheppard v. Rhay, supra.*

It is against this backdrop of changed juvenile court law and practice that we reach our decision in the present case.

There is nothing in constitution, statute or court rule which forbids the police to question a juvenile who is suspected of having committed a crime, so long as there is no unnecessary delay in taking the youngster to the juvenile authorities. *State v. Prater,* 77 Wn.2d 526, 533, 463 P.2d 640 (1970); *State v. Baker,* 4 Wn. App. 121, 127, 480 P.2d 778 (1971). We know of no reason why this same rule should not also apply in cases, as here, where the police exercise their option of releasing the juvenile to a parent or other person in a similar relationship as they are authorized by statute to do. RCW 13.04.120. As has been stated, "it would be unrealistic to assume that an officer can properly perform his duties without asking questions." *State v. Prater, supra* at 534.

The request of petitioner's counsel that we reverse the juvenile court's decision in this case is premised on the

argument that it was error for that court to admit petitioner's confession into evidence for any purpose.

The case was tried to the court. In nonjury cases the rules with respect to admission and rejection of evidence are more relaxed than in jury trials. Liberal admission of evidence is ordinarily encouraged in nonjury cases. *State v. Bell*, 59 Wn.2d 338, 365, 368 P.2d 177 (1962); *State ex rel. Beam v. Fulwiler*, 6 Wn. App. 369, 372, 492 P.2d 1040 (1972). Juvenile cases are nonjury cases and these principles are equally applicable here.

At the time petitioner's signed confession was initially offered in evidence by the prosecutor in support of the petition alleging delinquency, it is clear that the commissioner considered whether or not the juvenile had knowingly and intelligently waived his *Miranda* rights and had voluntarily given the statement. *See State v. Fullen*, 7 Wn. App. 369, 373, 499 P.2d 893 (1972) and *State v. Toliver*, 6 Wn. App. 531, 534, 494 P.2d 514 (1972). There being no provision for a separate hearing and findings with respect to the confession as is required in criminal cases by CrR 3.5, nothing more was required in this regard.

The only disability found in the statement was the undue length of time that the juvenile had been in custody before release. As the prosecutor points out, other courts in somewhat similar situations have admitted the confessions outright. *State v. Baker, supra*; *In re Anderson*, 227 Pa. Super. 439, 313 A.2d 260 (1973). Nonetheless, such a determination made by the court with the witnesses before it, and based on such pertinent factors as the age, intelligence and experience of the juvenile, will not here be interfered with—particularly since the juvenile was 13 years of age. Such a determination must be made based on the facts of each individual case. *State v. Prater, supra*; *State v. Baker, supra*.

There is a distinction between the use of statements or confessions on cross-examination and their use on direct examination. The pretrial statement of an accused taken without advisement of the accused's *Miranda* rights, for

example, is nevertheless admissible to impeach the accused on cross-examination provided that its trustworthiness satisfies legal standards. *Harris v. New York*, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971). Our courts have consistently followed this. *State v. Davis*, 82 Wn.2d 790, 793, 514 P.2d 149 (1973); *Riddell v. Rhay*, 79 Wn.2d 248, 249, 484 P.2d 907 (1971); *State v. Mattox*, 12 Wn. App. 907, 909, 532 P.2d 1194 (1975).

The rationale for this rule was stated in *Riddell v. Rhay, supra* at 252-53, quoting Chief Justice Burger in *Harris*:

> The impeachment process here undoubtedly provided valuable aid to the jury in assessing petitioner's credibility, and the benefits of this process should not be lost, in our view, because of the speculative possibility that impermissible police conduct will be encouraged thereby. Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.
>
> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. *See United States v. Knox*, 396 U. S. 77 (1969); *cf. Dennis v. United States*, 384 U. S. 855 (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.
>
> The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.

As the United States Supreme Court recently reaffirmed, "the balance was struck in *Harris*, and we are not disposed to change it now." *Oregon v. Hass*, 420 U.S. 714, 723, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975). Nor are we.

We are not persuaded by petitioner's argument that

a confession or statement taken from a juvenile who, according to the trial court's determination has not been promptly enough turned over to juvenile authorities or family, should be treated as inherently more untrustworthy than such a statement or confession taken in violation of the *Miranda* rules. A primary concern of the courts in requiring accused persons to be advised of their constitutional rights by a *Miranda* warning is the potentiality of compulsion inherent in in-custody interrogations. *State v. Creach*, 77 Wn.2d 194, 197, 461 P.2d 329 (1969). This is basically the same concern of the courts where juveniles have been arrested but not turned over to juvenile authorities or family without unnecessary delay. *State v. Prater, supra; State v. Baker, supra.*

The petitioner here was represented by counsel. He had the right to remain silent throughout the fact-finding hearing. *In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967); JuCR 7.1. At the time petitioner's answer was originally filed in juvenile court, the right to remain silent was invoked in writing on his behalf. It was only after the court had ruled petitioner's confession inadmissible that he testified on his own behalf. He did not have to testify, but when he did, he was subject to impeachment by any appropriate impeachment evidence.

Impeachment evidence affects the credibility of a witness and is not proof of the substantive facts encompassed in such evidence. *State v. Fliehman*, 35 Wn.2d 243, 245, 212 P.2d 794 (1949); *State v. Sandros*, 186 Wash. 438, 443, 58 P.2d 362 (1936). Since there is no affirmative evidence to the contrary, we must assume that the court knowing the rules of evidence applied such evidence for the proper purpose and no other. *State v. Bell, supra* at 364; *State v. Williams*, 9 Wn. App. 622, 624, 513 P.2d 854 (1973).

We have reviewed the record and, viewed as a whole, it shows that the confession was used for impeachment purposes only and that the court considered its trustworthiness sufficient to satisfy legal standards at the time it was admitted. The juvenile court did not err in admitting the

minor's confession into evidence for impeachment purposes. The policy against tolerating perjury is equally as strong in juvenile court as it is in any other court.

Other admissible evidence in the record also clearly established that petitioner was a delinquent in the respects found by the juvenile court. Thus, the admission of the confession here claimed to be error cannot be held to have been prejudicial in any event. *In re Forest,* 76 Wn.2d 84, 88, 455 P.2d 368 (1969).

The juvenile court's determination of delinquency is affirmed.

SWANSON and CALLOW, JJ., concur.