[No. 2780–2. Division Two. June 12, 1978.]

THE STATE OF WASHINGTON, *Respondent*, v. MARK
BARRIAULT, *Appellant*.

*John L. Farra,* for appellant.

*Curtis M. Janhunen, Prosecuting Attorney,* and *Susan A. Dubuisson, Deputy,* for respondent.

PEARSON, C.J.—Defendant appeals from an order of the juvenile court remanding him to the Superior Court for trial as an adult, and his subsequent conviction in Superior Court for second–degree murder. We affirm.

Mark Barriault was charged with killing Winifred Myers on July 25, 1976. He was 16 years old at the time and was brought before the juvenile court for a declination hearing pursuant to JuCR 6.1 and RCW 13.04.120. Conflicting opinions were presented as to whether Barriault should be kept in the juvenile system or tried as an adult. After some deliberation, the juvenile court declined jurisdiction over Barriault. The court's decision was based on several factors: Barriault was living an adult life style at the time the offense was committed; the crime charged was committed in a willful, violent, and aggressive manner; Barriault had been referred to the Juvenile Department 15 times previously for various minor offenses; and the juvenile court system lacked the resources to deal with Barriault. A petition seeking discretionary review of the juvenile court's order was denied by the court commissioner of this court on November 22, 1976. RAP 2.3(b).

■ Preliminarily, we point out that in oral argument counsel for Barriault withdrew two of his assignments of error. Counsel originally contended that the court commissioner erred in denying the motion for discretionary review and should have granted direct review, but conceded that this assignment of error is not meritorious in view of *In re Lewis,* 89 Wn.2d 113, 569 P.2d 1158 (1977). Likewise, counsel withdrew his void–for–vagueness challenge to RCW 13.04.120 because there is substantial authority upholding the statute. *See In re Harbert,* 85 Wn.2d 719, 723, 538 P.2d 1212 (1975); *In re Burtts,* 12 Wn. App. 564, 572–73, 530 P.2d 709 (1975). We consider these assignments of error abandoned and no longer part of this appeal. *Keen v. O'Rourke,* 48 Wn.2d 1, 290 P.2d 976 (1955).

Barriault's first serious assignment of error is that the trial court abused its discretion under RCW 13.04.120 by remanding him to superior court for trial as an adult. *State v. Williams,* 75 Wn.2d 604, 453 P.2d 418 (1969), stated that eight factors ought to be considered by the trial court in making its declination determination. *See Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966). Not all eight need be present to justify a declination order. *In re Hernandez,* 15 Wn. App. 205, 548 P.2d 340 (1976).

■ The juvenile court's findings of fact reflect that many of the *Kent* factors warranting declination of jurisdiction were present and were considered by the trial court in this case. Despite evidence to the contrary stressed by defendant, the court's findings are supported by substantial evidence and should not be overturned. *In re Harbert, supra; In re Burtts, supra.*

At Barriault's superior court trial, the State was allowed, after a CrR 3.5 hearing, to introduce into evidence Barriault's confession, which he made shortly after his arrest. Barriault argues that this ruling was erroneous because the confession was obtained in violation of his rights as a child.

.

JuCR 3.1 states:

> Any child who is taken into custody and who is not released to his parent, guardian, custodian or a responsible relative, pursuant to RCW 13.04.120,[1] shall be taken *directly* before the Juvenile Court or placed in the detention facility under the jurisdiction of that court, or into the custody of a probation officer.

(Italics ours.) Barriault contends that under this rule it was illegal for the police to interrogate him once they discovered that he was under 18 years old, and that they should have taken him to juvenile authorities immediately.

Barriault was arrested by Aberdeen police officers on July 26 at approximately 11:30 p.m. and verbally given his constitutional rights. He was placed in a patrol car for transport to the Aberdeen Police Department. At the police station, he was given the Aberdeen Police Department "Advice to Rights" form, which stated among other things, "I also understand that being over the age of sixteen years I may be remanded to adult court and so tried." Barriault indicated in writing that he understood each of his rights and signed the form. Police admitted that they made no immediate effort to contact juvenile authorities or to turn Barriault over to the juvenile center.

Barriault requested that he be allowed to call his mother, and he spoke with her by telephone. He was then asked whether he wished to make a statement concerning the Myers murder, and he indicated that he did. At 11:51 p.m. he began to give police a lengthy statement admitting that he had grabbed the victim by the throat and choked her. It

---

[1]RCW 13.04.120 states in pertinent part:

"When, in any county where a juvenile court is held, a child under the age of eighteen years is taken into custody by a parole, peace, police or probation officer, such child shall be taken *directly* before such court, or placed in the detention home or place under the jurisdiction of such court, or into the custody of the court probation officer: *Provided,* That if the parent, guardian, custodian or a responsible relative of the child furnishes the officer a signed statement agreeing to produce the child at the next juvenile court session, the child may be released to the signer of the statement. Any such signer who fails, without just cause shown to the court, to produce such child as agreed, shall be guilty of contempt of court and may be punished accordingly." (Some italics ours.)

took approximately 30 minutes for police to write out Barriault's statement. As he was completing the statement, Barriault's mother arrived and spoke with him afterward for about 10 minutes. Meanwhile, the police in consultation with the county prosecutor prepared additional, more specific questions for Barriault, and took three more statements from him at 12:40 a.m., 1:18 a.m., and 1:50 a.m. These statements were merely embellishments on the first statement and were primarily aimed at finding out whether Barriault had raped the victim, a fact which was not clear from his original statement. Barriault's mother was permitted to speak with Barriault after each statement, but was asked to leave during the interrogation.

At 2:14 a.m. Barriault signed a form giving police authorization to seize the clothing he wore at the time of the murder, and he accompanied officers to his sister's house, where the clothing was located. At 3:30 a.m. Barriault was delivered to the juvenile center in Hoquiam.

 To be admissible as substantive evidence in a superior court trial, a juvenile's confession must be preceded by advice of constitutional rights and a warning of the possible consequences of any admission, including the possibility of superior court prosecution. *State v. Prater,* 77 Wn.2d 526, 463 P.2d 640 (1970). Once the child has been properly admonished with regard to all of the above, the police may interrogate the child, provided the child knowingly and voluntarily waives his rights.

> Whether there is such a waiver depends on a number of factors such as the age, intelligence and experience of the juvenile. Whether a proper warning is given and whether there is an intelligent waiver is a factual matter for the court to decide in each case.

*State v. Prater, supra* at 534. *See State v. Baker,* 4 Wn. App. 121, 126, 480 P.2d 778 (1971).

Barriault does not contend that he was not advised of his rights properly (in fact, he was told his rights three times in 30 minutes, at least once in writing); nor does he contend that he was incapable of understanding his rights, or that

he did not appreciate the adversarial nature of the interrogation.[2] Barriault's sole complaint is that his transfer to juvenile authorities was not immediate, but was delayed because police wanted to ask him some questions and transcribe his confession.

█ Full custodial questioning of a juvenile prior to turning him over to juvenile authorities is generally impermissible. *State v. Luoma*, 88 Wn.2d 28, 36, 558 P.2d 756 (1977). *See also State v. Prater, supra* at 534. However, "neither the constitution nor [JuCR 3.1 or RCW 13.04.120] forbids the police to ask any questions of a child who is arrested." *State v. Prater, supra* at 533. The police may "question a juvenile who is suspected of having committed a crime, so long as there is no *unnecessary* delay in taking the youngster to the juvenile authorities." (Italics ours.) *In re Noble*, 15 Wn. App. 51, 57, 547 P.2d 880 (1976), citing *State v. Prater, supra* at 533; *State v. Baker*, 4 Wn. App. 121, 127, 480 P.2d 778 (1971). In other words, police may delay turning a juvenile over to juvenile authorities or family in order to ask the child some questions, but they cannot use delay or prolonged exploratory questioning to enhance the compulsion inherent in in–custody interrogations. *See In re Noble, supra* at 60. The purpose of JuCR 3.1 and RCW 13.04.120 is to prevent the police from taking advantage of the naiveté, imprudence, and inexperience of juveniles. *State v. Luoma, supra* at 36. An unnecessary delay, purposeful or otherwise, creates an atmosphere of coercion and, therefore, is grounds for excluding a confession.

On the other hand, if the delay is not protracted beyond the time necessary to properly process a juvenile arrest, and

---

[2]The record shows that Barriault was an older child (16 years old) of somewhat below average intelligence but capable of reading and writing. He was arrested by uniformed officers, handcuffed, placed in a patrol car, informed that he was charged with murder, and taken to the police station. These circumstances when combined with Barriault's numerous prior contacts with the juvenile justice system lead to the conclusion that he was well aware of the seriousness of his situation. *See State v. Luoma*, 88 Wn.2d 28, 558 P.2d 756 (1977).

initial questioning of the juvenile indicates an immediate desire on his part to make a statement, the admissions or confession of the juvenile are admissible in evidence. *State v. Baker, supra* at 126–27.

Barriault was arrested at 11:30 p.m., arrived at the police station at 11:45 p.m., and began reciting a confession at 11:51 p.m. We do not believe that the 21 minutes which intervened between the time of arrest and the time of confession constituted an unnecessary delay; nor do we believe that Barriault's arrival at the juvenile center was unnecessarily delayed because the police took time to transcribe his confession and to ask more specific questions.[3] The record contains no indication that Barriault's confession was the product of any police coercion or "grilling." No threats, promises, or inducements were made, no request by Barriault was denied, and at no time did Barriault indicate that he wanted to stop the interrogation. The questioning was limited to the case under investigation. The delay in no way tainted the trustworthiness of the confession. Therefore, we hold that the trial court ruled properly when it admitted the statements in evidence.

Defendant next assigns error to the trial court's ruling that allowed prosecution witness John Kraft to read in evidence a statement he gave to the Aberdeen Police Department regarding a conversation he had with the defendant. The statement was hearsay, but was offered and admitted on rebuttal as a prior consistent statement. Prior consistent statements are admissible to rehabilitate a witness whose testimony had been assailed on cross–examination. *State v. Epton*, 10 Wn. App. 373, 518 P.2d 229 (1974). While Kraft was questioned closely on cross–examination regarding his statement to the police, his testimony did not vary from the statements he gave on direct. Therefore, there was no need to rehabilitate him by prior consistent

---

[3]The period of delay between 1:50 a.m. and 3:30 a.m. was subsequent to the interrogation and, therefore, inconsequential insofar as the confession is concerned.

statements, nor was the writing admissible as past recollection recorded, because Kraft remembered his conversation with the defendant and the writing was not made soon after the conversation. *Ventoza v. Anderson,* 14 Wn. App. 882, 545 P.2d 1219 (1976). Thus it was error to admit Kraft's written statement in evidence. However, we cannot say that the case against defendant would have been significantly less persuasive if Kraft's testimony on redirect had not been admitted; therefore the error is harmless. *State v. DeWilde,* 12 Wn. App. 255, 529 P.2d 878 (1974).

Defendant's remaining assignments of error involve jury instructions. Defendant was charged with second–degree murder, RCW 9A.32.050, which requires an intent to kill.[4] The court instructed the jury that:

As used in these instructions, the words "with intent" shall mean willfully and purposely, and the State of Washington must prove that the Defendant acted with intent to kill the victim in order for you to find the Defendant guilty of the crime of Second Degree Murder.

A person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result which constitutes a crime.

Defense counsel took exception to this instruction. His argument, in its entirety, follows:

For the record and for the court, so that the court is not misled by the defense, I have told the court in chambers that we in fact withdrew Instruction No. A, which is the instruction that I proposed originally to the court. It is my feeling that the first paragraph of the court's instruction is the proper instruction to be given, and realizing that the court has included the statutory language as the second paragraph, we still except to the actual terminology of the complete instruction. I hope I have made my position clear as far as I do not want to mislead the court.

---

[4]RCW 9A.32.050 states, in pertinent part:

"(1) A person is guilty of murder in the second degree when:

"(a) With intent to cause the death of another person but without premeditation, he causes the death of such person or of a third person . . ."

Counsel obviously failed to make an argument in support of his exception.[5]

■ Where trial counsel's exception to an instruction and his discussion do not clearly apprise the trial court of the points of law or issues involved, the instruction cannot be challenged on appeal. *Seattle v. Rainwater,* 86 Wn.2d 567, 571, 546 P.2d 450 (1976); CrR 6.15(c).

Finally, defendant assigns error to the failure of the trial court to instruct on the lesser–included offense of second–degree manslaughter. RCW 9A.32.070. The trial court did instruct on first–degree manslaughter, RCW 9A.32.060, but the jury found defendant guilty of the greater offense of second–degree murder. The jury verdict indicates that the defendant was not prejudiced by the failure to give a second–degree manslaughter instruction. *State v. Harris,* 62 Wn.2d 858, 385 P.2d 18 (1963).

The judgment of the trial court is affirmed.

PETRIE and REED, JJ., concur.

Reconsideration denied July 10, 1978.

Review denied by Supreme Court November 17, 1978.

---

[5]The second paragraph of the instruction, which was the part excepted to by counsel, uses the language of RCW 9A.08.010(1)(a) and was, therefore, presumably correct. *State v. Whittier,* 13 Wn. App. 293, 535 P.2d 847 (1975). *See also* WPIC 10.01 and WPIC 27.02, 11 Wash. Prac. (1977).