[Nos. 12284-1-III; 12430-4-III; Division Three. January 27, 1994.]
    12431-2-III; 12608-1-III.

THE STATE OF WASHINGTON, *Petitioner,* v. JON BARRY
SCHATMEIER, *Respondent.*

THE STATE OF WASHINGTON, *Petitioner,* v. KERI LYNN
DURGAN, *Respondent.*

THE STATE OF WASHINGTON, *Petitioner,* v. ROBERT R.
WRIGHT, *Respondent.*

THE STATE OF WASHINGTON, *Petitioner,* v. KELEIGH D.
HALL, *Respondent.*

712

*Donald C. Brockett, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for petitioner.

*Brenda S. Snyder* and *Dawson & Meade, P.S.; Molly A. Campbell* of *Spokane Public Defender's Office,* for respondents.

SWEENEY, A.C.J. — The cases of four juveniles, Jon Schatmeier, Keri Durgan, Robert Wright and Keleigh Hall, were consolidated for purposes of review. On separate occasions, each was arrested for driving while intoxicated (DWI) and given *Miranda*[1] warnings which included the following language:

1. You have the right to remain silent;
2. Any statement that you do make can and will be used as evidence against you in a court of law. (If you are a juvenile, your statement may be used against you in juvenile court or in a criminal prosecution in any adult court in the event juvenile court declines jurisdiction in your case.);

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

Each juvenile waived the right to remain silent. Mr. Schatmeier and Ms. Durgan, both age 16, and Ms. Hall, age 17, submitted to a breath test. Because he had been involved in a traffic accident, Mr. Wright, age 17, was given a blood alcohol test.[2]

Pretrial, the juveniles moved to suppress their respective statements and the results of the alcohol tests. The District Court found the warnings given to Mr. Schatmeier were inaccurate, but denied the motion to suppress. The court ruled that although the "wording of the warning was erroneous, [the wording was] of no constitutional consequence." The Superior Court reversed and ordered suppression of all evidence obtained from Mr. Schatmeier following the *Miranda* warnings. Based on the Superior Court's holding in the Schatmeier case, the District Court granted Mr. Wright's and Ms. Durgan's motions to suppress. The District Court dismissed the DWI charge against Ms. Hall. The Superior Court affirmed the rulings; we granted discretionary review.

### ISSUES AND CONCLUSIONS

Two issues are presented on appeal:

1. Were the *Miranda* warnings given to the juveniles accurate?

2. If the warnings were inaccurate, is the appropriate remedy suppression of the evidence obtained after the warnings were given?

---

[2]Mr. Wright was also given the implied consent warnings. RCW 46.20.308 provides in part:

"(1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcoholic content of his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.

"(2) . . . The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial."

We conclude the warnings given to the juveniles were technically inaccurate. The warnings, however, were sufficient to convey the import of *Miranda*. Therefore, we reverse the rulings of the Superior Court. We remand for further proceedings to determine whether the juveniles made a knowing and intelligent waiver of their rights.

## I

*Miranda* Warnings. RCW 13.04.030 provides in relevant part:

> *The juvenile courts . . . shall have exclusive original jurisdiction* over all proceedings:
>
> . . . .
>
> (5) Relating to juveniles alleged or found to have committed offenses, traffic infractions . . . *unless*:
>
> . . . .
>
> (c) *The alleged offense or infraction is a traffic,* fish, boating, or game offense or traffic infraction *committed by a juvenile sixteen years of age or older and would, if committed by an adult, be tried or heard in a court of limited jurisdiction,* in which instance the *appropriate court of limited jurisdiction shall have jurisdiction over the alleged offense or infraction*: PROVIDED, That if such an alleged offense or infraction and an alleged offense or infraction subject to juvenile court jurisdiction arise out of the same event or incident, the juvenile court may have jurisdiction of both matters: PROVIDED FURTHER, That the jurisdiction under this subsection does not constitute "transfer" or a "decline" . . .[.]

(Italics ours.) Accordingly, a juvenile, over the age of 16, who faces only a DWI traffic infraction would have the matter heard in district court, not juvenile court. The assumption of jurisdiction by the district court does not constitute a transfer or decline of jurisdiction. RCW 13.04.030(5)(c).

If, however, a juvenile over age 16 is also charged with an offense arising out of the same event or incident, which is subject to the jurisdiction of the juvenile court, then the juvenile court "may have" jurisdiction of both matters. RCW 13.04.030(5)(c).

Here, the warnings given to the four juveniles informed them that the statements they made may be used against them in juvenile court or in a criminal prosecution in adult court "in the event juvenile court declines jurisdiction . . .".

Because the assumption of jurisdiction by the district court does not constitute a transfer or decline of jurisdiction, RCW 13.04.030(5)(c), the warnings given to the juveniles were at odds with the statute and were technically inaccurate.

## II

*Appropriate Remedy.* We must therefore determine whether suppression of the juveniles' respective statements and breath/blood alcohol test results is required. The juveniles argue that the semantical alteration in the wording of the *Miranda* warnings denied them the opportunity to make an intelligent waiver. In response, the State contends its warnings complied with *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), which requires the expression of at least the following rights and warning: (1) the right to remain silent; (2) the warning that any statement can be used against the suspect; (3) the right to have counsel present; and (4) the right to have counsel appointed if the suspect cannot afford counsel.

■ *Full Import of Miranda.* Statements stemming from custodial interrogation may not be used unless the prosecutor demonstrates the use of procedural safeguards, which include, "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, at 444. Specifically, *Miranda* requires that

> [t]he warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege.

*Miranda*, at 469.

Advisement of *Miranda* rights need not follow precise language word for word, but must inform a defendant of his rights "in a way which conveys their full import". *State v. Rupe*, 101 Wn.2d 664, 677, 683 P.2d 571 (1984) (citing *California v. Pry-*

*sock*, 453 U.S. 355, 69 L. Ed. 2d 696, 101 S. Ct. 2806 (1981) (per curiam)). Accordingly, "[a] defective *Miranda* warning does not necessarily require reversal of a conviction." *United States v. Lopez-Diaz*, 630 F.2d 661, 663 (9th Cir. 1980) (citing *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099 (1977); *Maguire v. United States*, 396 F.2d 327 (9th Cir. 1968), *cert. denied*, 393 U.S. 1099 (1969)).

An inaccurate *Miranda* warning may be sufficient if there is direct evidence that the defendant was aware of his or her rights. *Pheaster*, at 366. Whether proper warnings have been given is a factual matter for the trial court to decide in each case. *State v. Prater*, 77 Wn.2d 526, 534, 463 P.2d 640 (1970).

In *State v. Rupe, supra*, the defendant was advised that " '[a]nything I say or sign can be used against me.' " *Rupe*, at 677. He asserted that he should have been advised that " 'any statement . . . *can and will* be used as evidence against him' ". *Rupe*, at 677. The court found that the warning was sufficient to adequately inform the defendant of his constitutional rights.

The test for adequacy of *Miranda* warnings is simply whether a defendant understands that he had a right to remain silent, and that anything he said could be used against him in a court of law. The warnings given to the four juveniles, although technically inaccurate, conveyed that message. An arrestee is not required to understand the precise legal effect of his or her admissions. *Dutil v. State*, 93 Wn.2d 84, 90, 606 P.2d 269 (1980).

The warnings here began with the categorical admonition that "[a]ny statement that you do make can and will be used as evidence against you in a court of law." Only then do the warnings proceed to the contingent and permissive statement, "If you are a juvenile, your statement may be used against you in juvenile court or in a criminal prosecution in any adult court in the event juvenile court declines jurisdiction in your case." The officers did not promise the juveniles that they would be tried in juvenile court. The warnings

were sufficient to advise the defendants that their statements could be used against them in court, either juvenile or adult court. That is all *Miranda* requires.

The juveniles rely on *State v. Davis*, 3 Wn. App. 684, 477 P.2d 44 (1970). Their reliance is misplaced. In *Davis*, this court remanded the matter for entry of findings of fact concerning the juvenile's knowledge of the possible criminal prosecution and for a determination of the admissibility of the juvenile's confession. We directed the trial court to examine the "circumstances of the confession to determine if the juvenile had knowledge of a possibility of the declination of jurisdiction by the juvenile court." *Davis*, at 685. Our concern in *Davis* was that the juvenile understand the adversarial nature of the arrest and interrogation before the confession could be used against him in adult court. *Davis*, at 685-86. In contrast, the warnings given to the four juveniles here adequately conveyed the potential of a criminal prosecution in adult court.

The juveniles further argue that the statutory warnings denied them the opportunity to make an intelligent waiver. The three cases they rely on, however, involve allegedly improper implied consent warnings, RCW 46.20.308, not inaccurate *Miranda* warnings. *See Welch v. Department of Motor Vehicles*, 13 Wn. App. 591, 536 P.2d 172 (1975) (opportunity to exercise intelligent judgment requires that operator be advised of mandatory effect of a refusal to be tested); *State v. Whitman Cy. Dist. Court*, 105 Wn.2d 278, 714 P.2d 1183 (1986) (implied consent statute requires that the officer shall warn driver that refusal to submit may be used in any subsequent criminal trial; officer has no discretion with regard to wording); *Cooper v. Department of Licensing*, 61 Wn. App. 525, 810 P.2d 1385 (1991) (driver told if he refused breath test he would lose license probably for at least 1 year; inaccurate implied consent warning precludes revocation of driver's license). These decisions are inapposite.

■ The juveniles also argue that when they waived their rights, they did not understand the consequences of a "declination" by the juvenile court and were not able to evaluate

the likelihood of this occurrence. There is no showing here that any of the juveniles would have had any knowledge of the distinction between juvenile court and adult court or the juvenile court's procedures for declining jurisdiction. The comments of our Supreme Court in *Dutil v. State*, *supra* at 90, are insightful:

> Studies which the petitioners have called to our attention indicate that juveniles often do not understand the full import of the exercise or waiver of their constitutional rights. This is not surprising. Indeed, we would be surprised if many adults can be said to have such comprehension. As this court held in *State v. Aiken*, 72 Wn.2d 306, 434 P.2d 10 (1967), the test is whether a person knew he had the right to remain silent, and that anything he said could be used against him in a court of law, not whether he understood the precise legal effect of his admissions. . . . If a juvenile understands that he has a right, after he is told that he has that right, and that his statements can be used against him in a court, the constitutional requirement is met.

The juveniles suggest that the reference to juvenile court in these warnings is important because juvenile court is friendlier than adult court. Even laying aside for the moment that the warnings here specifically refer to adult court, the juveniles' argument is still unpersuasive. Whether the penalty in juvenile court will be less onerous than that imposed in adult court depends upon a number of circumstances, all of which are unknown at the time of the arrest. The degree of punishment depends upon a juvenile's age, prior criminal history, and the severity of the offense.

██ Knowing and Intelligent Waiver. Because the court ruled that the warnings were inaccurate, the Superior Court did not reach the issue of whether the juveniles' rights were voluntarily and knowingly waived. Whether a juvenile has voluntarily and knowingly waived his or her *Miranda* rights is determined by the totality of the circumstances. *State v. Jones*, 95 Wn.2d 616, 625, 628 P.2d 472 (1981); *State v. Allen*, 63 Wn. App. 623, 626, 821 P.2d 533 (1991). This approach mandates

> inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into

whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequence of waiving those rights.

*Jones*, at 625 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 61 L. Ed. 2d 197, 99 S. Ct. 2560 (1979)). "The totality approach permits — indeed, it mandates — inquiry into all the circumstances surrounding the interrogation." *Dutil v. State, supra* at 88 (quoting *Fare v. Michael C., supra* at 725). Whether proper warnings have been given and whether there has been a knowing and intelligent waiver is a factual matter for the trial court to determine in each case. *State v. Prater, supra* at 534.

We reverse and remand for that determination.

MUNSON, J., and WARDELL, J. Pro Tem., concur.

Review denied at 124 Wn.2d 1019 (1994).