267 P.3d 524 (2011)
STATE of Washington, Respondent,
v.
Cody Wayne MILLER, Appellant.
No. 29067-1-III.
Court of Appeals of Washington, Division 3.
December 8, 2011.
*525 David L. Donnan, Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Appellant.
Edward Asa Owens, D. Angus Lee, Grant County Prosecutor's Office, Ephrata, WA, for Respondent.
KORSMO, A.C.J.
¶ 1 Cody Miller challenges his conviction for first degree robbery on the basis that he was not given the juvenile variation of the Miranda[1] warnings. For several reasons, we reject his argument and affirm.

FACTS
¶ 2 An Ephrata convenience store was robbed on the evening of November 25, 2010. Andrew Zastrow was purchasing a soft drink at the store when a young man entered holding a gun and a bag; a bandana covered the young man's face. Mr. Zastrow left the store and the young man demanded money. The store clerk complied with the request and the robber left. The store's video system recorded the event. A copy of the recording was admitted into evidence and played at trial.
¶ 3 The investigating officers found two sets of footprints that traveled from the convenience store to the northeast corner of the nearby Best Western Hotel. The officers reviewed the surveillance video and recognized Mr. Zastrow. They asked him to come to the police station for an interview that evening.
*526 ¶ 4 Mr. Zastrow initially told officers that he had walked to the convenience store and had been with a friend named Bryant. He denied any involvement in the robbery. Two weeks later he was again interviewed by police and shown the video. Mr. Zastrow told the officer that he had been with Cody Miller that evening and that Mr. Miller had robbed the convenience store.
¶ 5 Officer Christopher Huffman drove Mr. Zastrow home after the initial November 25 interview and saw Cody Miller waiting outside Zastrow's house. Mr. Miller was dressed similarly to the robberhe was wearing a tan coat, faded baggy jeans, and black and white tennis shoes. Officer Huffman asked Mr. Miller if he would speak with police. Mr. Miller agreed to be interviewed at the police department. Officer Huffman gave him a ride to the police station.
¶ 6 Corporal Erik Koch interviewed Mr. Miller and began by telling him he wanted to talk to him because he fit the description of the robber. Believing from prior encounters that Mr. Miller was 18, Corporal Koch advised him of the standard Miranda warnings without using the additional juvenile language commonly used in this state.[2] In fact, Mr. Miller was 17. He waived his Miranda rights and recounted his evening activities for the corporal. He told the corporal that he had been with Mr. Zastrow and the two had driven to the Best Western where Miller's mother worked in order to use a computer. While Mr. Miller was on the computer, Mr. Zastrow went over to the convenience store to purchase a soft drink. However, Mr. Zastrow came back without the soft drink and was acting strangely. Mr. Miller denied any knowledge of the matter and specifically denied committing a robbery.
¶ 7 The prosecutor charged Mr. Miller as an adult with one count of first degree robbery while armed with a firearm.[3] Mr. Miller sought to suppress his statement, arguing that he needed to be advised of the juvenile rights. The trial court determined that Mr. Miller had undergone custodial interrogation and was entitled to his Miranda warnings. However, the court determined that the warnings given Mr. Miller were proper and there was a valid waiver of rights. Clerk's Papers (CP) at 158-159. The statements were ruled admissible. CP at 159.
¶ 8 The jury convicted Mr. Miller as charged. He then timely appealed to this court.

ANALYSIS
¶ 9 The sole issue in this appeal involves the Miranda warnings given to Mr. Miller.[4] We conclude that there is no requirement that additional warnings be given to juveniles. The trial court correctly ruled that Mr. Miller was properly warned and that his waiver of rights was valid.
¶ 10 While the question presented by this appeal is novel, well-settled principles of law govern our analysis. Prior to conducting a custodial interrogation, police must first advise a suspect (1) of his right to remain silent and provide notice that anything said to the police might be used against him, (2) of the right to consult with an attorney prior to answering any questions and have the attorney present for questioning, (3) that counsel will be appointed for him if desired, and (4) that he can end questioning at any time. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A defendant is in custody for purposes of Miranda when his freedom of action is curtailed *527 to the degree associated with a formal arrest.[5]Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Interrogation is "express questioning or its functional equivalent" by police. Rhode Island v. Innis, 446 U.S. 291, 300-301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The "functional equivalent" of questioning involves behavior that police should know is "reasonably likely to elicit an incriminating response." Id. at 302, 100 S.Ct. 1682.
¶ 11 The United States Supreme Court extended the protections of Miranda to juveniles in In re Application of Gault, 387 U.S. 1, 42-57, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The court, however, did not require any additional language to supplement the rights identified in Miranda, although it noted that "there may well be some differences in technique." Id. at 55, 87 S.Ct. 1428. When that court subsequently has considered Miranda warnings given to juveniles, it appears to have always involved the traditional "adult" Miranda rights. E.g., California v. Prysock, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981); Roper v. Simmons, 543 U.S. 551, 557, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).
¶ 12 Mr. Miller argues that the Washington Supreme Court mandated additional juvenile language for Miranda warnings in State v. Prater, 77 Wash.2d 526, 463 P.2d 640 (1970). The State contends that no additional juvenile Miranda language is required.
¶ 13 In Prater, the 17-year-old defendant had been arrested for automobile theft and advised of his Miranda warnings.[6] The juvenile court declined jurisdiction and the defendant was tried and convicted in superior court. Id. at 527-528, 463 P.2d 640. On appeal, Mr. Prater argued for a position adopted by a federal court in a pre-Gault ruling, Harling v. United States, 295 F.2d 161 (D.C.Cir.1961), where the court concluded that no statement made by a juvenile prior to declination of jurisdiction to adult court would be admissible in adult court. Prater, 77 Wash.2d at 530-531, 463 P.2d 640. The Prater court declined to adopt Harling, opting instead to follow a different pre-Gault ruling, State v. Gullings, 244 Or. 173, 416 P.2d 311 (1966). Prater quoted extensively from Gullings, including the following emphasized language from which Mr. Miller argues:
"Presuming that federal constitutional Fifth and Sixth Amendment rights are granted, we believe that an absolute prohibition is not required so long as it is made clear to the juvenile that criminal responsibility can result and that the questioning authorities are not operating as his friends but as his adversaries. In the present case we believe this was made abundantly clear to the defendant."
Prater, 77 Wash.2d at 531-532, 463 P.2d 640 (emphasis added) (quoting Gullings, 244 Or. at 178-179, 416 P.2d 311).
¶ 14 The Prater court concluded its discussion of Gullings with one further quotation:
"So long as information is available which meets constitutional criminal due process standards and which was not secured through the close relationship between court worker and child, the safety and security of the law-abiding public requires its use in adult criminal proceedings."
Id. at 532, 463 P.2d 640 (quoting Gullings, 244 Or. at 180, 416 P.2d 311 (footnote omitted)).
¶ 15 Prater then immediately announced its decision on the issue:
We are of the opinion that such a rule affords the safeguards prescribed by Gault, does not threaten the integrity and proper functioning of the juvenile courts, and at the same time permits a legitimate use of evidence which is given under conditions importing trustworthiness.
Id. The court went on to note that its ruling was consistent with a soon to be effective juvenile court rule concerning waiver of rights. Declaring that the rule would have *528 no effect on police procedures, the court observed that officers would still need to give Miranda warnings and that whether a valid waiver had occurred would still require a factual determination by the trial court. Id. at 534, 463 P.2d 640.
¶ 16 At no time did the Prater court suggest that special juvenile language needed to be added to the Miranda warnings. In its subsequent review of cases involving juveniles and Miranda warnings, the court dealt with standard "adult" Miranda warnings.[7]E.g., State v. Luoma, 88 Wash.2d 28, 558 P.2d 756 (1977). As in Prater, the Luoma court resolved the case by looking to whether the substance of the Miranda rights had been adequately related to the juvenile arrested for murder rather than whether some type of juvenile-specific language had been used to convey the information. Id. at 34-38, 558 P.2d 756. The court squarely noted that "it was not necessary" for the 17-year-old defendant "to be specifically warned he may be tried in superior court rather than juvenile court." Id. at 38, 558 P.2d 756.
¶ 17 In light of this precedent, we conclude that there is no Washington requirement that juveniles be advised of additional information due to their age. While Luoma specifically stated that no juvenile-specific language was required in that case, it did indicate that such language might be useful for offenders engaged in borderline criminal conduct. Id. Both Prater and Luoma were issued prior to the significant changes wrought by the Juvenile Justice Act of 1977, chapter 13.04 RCW. While the possibility of a modern youth being confused about whether he will be treated as a "delinquent" rather than a "criminal" is unlikely, it is easy to contemplate that children close to the age of responsibility or whose reasoning is not well developed could be misled or misunderstand the consequences of talking to police. Accordingly, it may well be better practice to maintain some words of advice that convey the notion, reaffirmed by Luoma, that talking to police officers may result in adult charges being filed.
¶ 18 Our view of these authorities forecloses Mr. Miller's challenge here. He was not entitled to juvenile-specific language. The trial court correctly determined that Mr. Miller was appropriately advised of his rights. We also agree with the trial court that Mr. Miller knowingly and voluntarily waived those rights. CP at 159. Mr. Miller knew what the police wanted to talk to him about and the serious nature of the charge. He was not confused or misled about his circumstances. The trial court reviewed the totality of the circumstances and concluded that the waiver was valid. We agree with that assessment.
¶ 19 The conviction is affirmed.
WE CONCUR: SWEENEY and SIDDOWAY, JJ.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] "If you are under the age of 18, anything you say can be used against you in a juvenile court prosecution for a juvenile offense and can also be used against you in an adult court criminal prosecution if you are to be tried as an adult." Clerk's Papers at 158-159.
[3] The filing was under the so-called "auto decline" statute which exempts serious violent crimes by 16- and 17-year-olds from juvenile court jurisdiction. See RCW 13.04.030(1)(e)(iv), enacted by Laws OF 1994, 1st Spec. Sess., ch. 7, § 519. See generally In re Matter of Boot, 130 Wash.2d 553, 925 P.2d 964 (1996).
[4] The Brief of Appellant also challenged the trial court's failure to enter findings required by CrR 3.5(c). The court entered the findings, which had been submitted by the prosecutor 11 months earlier, two months after the Brief of Appellant was filed. The appellant did not file a reply brief or otherwise challenge the belated findings, so we will not address the issue further.
[5] The prosecutor has not assigned error to the trial court's ruling that Mr. Miller was in custody during his interview at the police station. We thus will not further address that ruling.
[6] The substance of the rights read to the defendant were in question, but the trial court accepted the officer's testimony that the entirety of the standard warnings had been given. Prater, 77 Wash.2d at 528-530, 463 P.2d 640.
[7] This court faced a challenge to the juvenile Miranda language in State v. Schatmeier, 72 Wash.App. 711, 866 P.2d 51, review denied, 124 Wash.2d 1019, 881 P.2d 254 (1994). There the court concluded that while the juvenile language was erroneous as applied to the process by which juveniles facing driving offenses would reach "adult" court, the error did not affect the substance of the Miranda rights or the validity of their waivers.