[Nos. 6070–5–III; 6080–2–III.   Division Three.   April 23, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. BILL
RAY JOHNSON, ET AL, *Appellants.*

*Paul J. Wasson II* and *Frank Conklin* (appointed counsel for appeal) and *Bill Ray Johnson,* pro se, for appellant Johnson.

*Richard W. Sanger* and *Sanger & Bartoletta* (appointed counsel for appeal) and *Russell Lenard McLaws,* pro se, for

appellant McLaws.

*Donald C. Brockett, Prosecuting Attorney,* and *Robert P. Kingsley, Deputy,* for respondent.

THOMPSON, J.—Bill Ray Johnson and Russell Lenard McLaws appeal their convictions of first degree murder. We affirm.

In the early morning hours of March 15, 1983, two armed men wearing ski masks, gloves, and heavy coats entered the home of Edward Prather and Julie Klassen. The men awakened the sleeping couple, and demanded drugs and money. Mr. Prather gave the gunmen $20 and marijuana packaged in Mickey Mouse sandwich bags; he was then taken by one of the gunmen into the kitchen where he was bound with wire. Ms. Klassen remained in the bedroom with the other gunman where she was raped. While the rape was being committed, Mr. Prather became partially free and an altercation broke out in the kitchen during which Mr. Prather apparently struck the gunman with a chair. The rapist ran to the kitchen and Ms. Klassen heard him say "get him", followed by a series of rapid gunshots. When Ms. Klassen later entered the kitchen, she saw Mr. Prather on the floor in a pool of blood; he died of gunshot wounds before the police arrived. The police recovered pry bars from the front porch of the house.

During the course of the investigation, Cindy Whitford, Mr. McLaws' girl friend, contacted the police, informing them of Mr. McLaws' participation in the crime. The police obtained statements from other witnesses, including accomplice Jeffery Paradiso, implicating both Mr. Johnson and Mr. McLaws in the murder. On May 1, 1983, an automobile driven by Mr. McLaws was stopped by the police for defective vehicle equipment. Mr. McLaws consented to a search of the vehicle in which the police recovered two ski masks and ammunition similar to that which killed Mr. Prather.

Mr. Johnson and Mr. McLaws were charged with the

killing of Edward Prather during the commission of first degree robbery on June 22, 1983. During the pretrial hearing, Mr. Johnson and Mr. McLaws sought to suppress the recorded witness statements contending they violated RCW 9.73, the privacy act. At trial, Mr. McLaws objected to the admission of the ski masks, ammunition, and pry bars as irrelevant and unduly prejudicial. A jury convicted Mr. Johnson and Mr. McLaws of first degree murder. Their motion for a new trial was denied and a sentence of life imprisonment was imposed.

Principal among the numerous issues raised by Mr. Johnson and Mr. McLaws is their contention the trial court erred in refusing to suppress certain witness statements. We disagree. Mr. Johnson and Mr. McLaws claim the police violated the privacy act, RCW 9.73, when recording witness statements, by failing to announce at the commencement of the tape that "such . . . conversation is about to be recorded . . ." RCW 9.73.030(3).[1] Thus, they sought to prevent the admission into evidence of either the tapes or any of the information contained in the tapes.

RCW 9.73.030(1)(a), (b) provide:

Intercepting or recording private communication—Consent required—Exceptions. (1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:

(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

---

[1] "(3) Where consent by all parties is needed pursuant to this chapter, consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication or conversation, in any reasonably effective manner, that such communication or conversation is about to be recorded or transmitted: *Provided*, That if the conversation is to be recorded that said announcement shall also be recorded."

(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

Any information obtained in violation of this statute is inadmissible. RCW 9.73.050. "Under our state privacy act, a defendant has standing to object to use of evidence obtained in violation of the statute, even though the defendant was not a participant in the unlawfully intercepted or recorded conversation." *State v. Williams,* 94 Wn.2d 531, 534, 617 P.2d 1012, 24 A.L.R.4th 1191 (1980). Thus, Mr. Johnson and Mr. McLaws have standing to object to evidence obtained in violation of RCW 9.73.

■ Mr. Johnson and Mr. McLaws, relying on *State v. Williams, supra,* claim a violation of RCW 9.73 prohibits in–court testimony from witnesses who participated in the recorded conversations, and the admission of any other information gained as a result of those recordings. Consequently, the State would be precluded from presenting any evidence of the crime where all evidence relates to prior witness statements made to the police. We decline to follow this interpretation of *Williams,* particularly since that court excluded police participant testimony about recorded conversations when the recording itself was suppressed. Here, the challenged testimony is not about recorded statements but consists of the witnesses' independent recollections of facts obtained through personal knowledge prior to the recordings. We hold such testimony is not subject to suppression under the privacy act. In addition, we find the recording sessions complied with RCW 9.73.

All parties stipulated at the pretrial hearing that at the beginning of each contested tape the following information was recorded: "names of the parties, who the statement [was] taken by, the date, the time [including time started and time stopped], and where it [was] being taken . . ." In addition, in denying the defense motion to suppress these recordings, the court noted that in each instance, except for

the taped telephone call from Ms. Whitford,[2] the tape recorder was on the table between the detective and witness during the conversations, and "[i]n each case the detective asked at the end of the conversation if the witness would sign a typewritten transcript of the recording, and the witness indicated their [sic] assent." As a result of these measures, the trial court found the recording sessions conformed with RCW 9.73.

Although the statements in question do not include conversations of Mr. Johnson or Mr. McLaws, several of the witnesses were being held in custody at the time their conversations were recorded. In *State v. Cunningham,* 93 Wn.2d 823, 829, 613 P.2d 1139 (1980), the court noted "[w]hile mere consent may be wholly sufficient to protect members of the general public whose statements have been recorded under noncustodial conditions, . . ." the recorded statements of arrested persons are "required to 'conform strictly' to rules which ensure that waiver by consent authorized by RCW 9.73.030 is capable of proof by the recording itself thereby avoiding a 'swearing contest'." Here, the parties were either read their rights during the recording or specific reference was made to a prior reading and an acknowledgment of those rights and a waiver recorded during the session.

RCW 9.73.030(3) provides consent may be found in the announcement in any reasonably effective manner that the statement is being recorded. The Supreme Court recently reviewed case law interpreting RCW 9.73 and noted with approval its holdings in *State v. Cunningham, supra,* and *State v. Jones,* 95 Wn.2d 616, 628 P.2d 472 (1981).

> In *Jones,* we found that the statute was not violated even though the tape did not contain the required statement that a recording was being made. In coming to that con-

---

[2]Ms. Whitford, however, was informed the conversation was being recorded, and she reluctantly consented as long as the recording was not played in court. Her later consent to the recording of her face–to–face conversation with Detective Best complied with RCW 9.73.

clusion, this court looked to the circumstances surrounding the taping. The evidence there demonstrated that the police officer had made statements regarding the taping of the conversations. In addition, the tape recorder was sitting on the table directly in front of the defendant. Under these facts, we agreed that the defendant knew the statements were being recorded. We concluded, therefore, that the tape recording conformed to the statute.

*State v. Rupe,* 101 Wn.2d 664, 681, 683 P.2d 571 (1984). Applying the *Jones* and *Rupe* holdings to the facts of the present case, we hold "the circumstances surrounding the taping" provided sufficient evidence the participants received effective notice that the conversation was being recorded.

▆ Next, Mr. Johnson and Mr. McLaws claim the trial court improperly instructed the jury on impeachment testimony. We disagree. Impeachment evidence affects a witness' credibility and is not proof of the substantive facts encompassed in such evidence. *In re Noble,* 15 Wn. App. 51, 60, 547 P.2d 880 (1976); *State v. Fliehman,* 35 Wn.2d 243, 212 P.2d 794 (1949). Where such evidence is admitted, an instruction cautioning the jury to limit its consideration of the statement to its intended purpose is both proper and necessary. *State v. Pitts,* 62 Wn.2d 294, 297, 382 P.2d 508 (1963). During the trial a number of witnesses were impeached by the use of prior inconsistent statements. The trial court gave instruction 14 which reads:

> Evidence has been admitted regarding out–of–court statements made by witnesses Julie Klassen, Henry Bronson, Emily Lehinger, and Cindy Whitford. This evidence may be considered by you only as it relates to credibility of these witnesses and for no other purpose.

Mr. Johnson and Mr. McLaws objected to the giving of this instruction declaring it to be an incorrect statement of the law because it precluded the jury from considering any of the out–of–court statements as true. They proposed to replace the court's instruction with a limited purpose instruction (based on WPIC 5.30), which reads:

> Evidence has been introduced in this case on the subject of alleged statements of Cynthia Whitford to Detective Best for the limited purpose of impeaching her credibility. You must not consider this evidence for the purpose of substantive evidence of guilt of either of the defendants.

The State claims Mr. Johnson and Mr. McLaws were, in effect, attempting to bring in Ms. Klassen's prior inconsistent statements as substantive evidence, rather than as an attack on her credibility. While hearsay is generally inadmissible evidence, a prior statement by the witness may not be hearsay if the witness "testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . ." ER 801(d)(1). Ms. Klassen's prior statements were made to the police following the incident. Although the Ninth Circuit has held the phrase "other proceeding" included sworn tape–recorded statements given to agents at a border patrol station, the court also stated not every sworn statement given during a police interrogation would be admissible. *United States v. Castro–Ayon*, 537 F.2d 1055 (9th Cir.), *cert. denied*, 429 U.S. 983, 50 L. Ed. 2d 594, 97 S. Ct. 501 (1976), *cited in* 5A K. Tegland, Wash. Prac., *Evidence* § 341, at 135 (2d ed. 1982). *See also State v. Smith*, 97 Wn.2d 856, 651 P.2d 207 (1982), in which the court held admissible as substantive evidence a complaining witness' statement, handwritten by her on a police form, signed and sworn to before a notary under penalty of perjury.

Ms. Klassen's statements to the police, on the other hand, were either oral or unsigned. Although language appears in a number of Washington cases, including *State v. Smith, supra* at 861, that "[i]n many cases, the inconsistent statement is more likely to be true than the testimony at trial as it was made nearer in time to the matter to which it relates . . .", the rule still remains that ". . .

'impeaching and contradictory statements are "admitted only to destroy the credit of the witnesses, to annul and not to substitute their testimony." . . .'" *State v. Thorne,* 43 Wn.2d 47, 53, 260 P.2d 331 (1953); *State v. Fliehman, supra* at 245. Therefore, we hold the court's instruction was proper and actually encompassed Mr. McLaws' proposed instruction.

Next, Mr. Johnson and Mr. McLaws contend an accomplice instruction was mandatory since the prosecution relied upon the testimony of Mr. Paradiso, an accomplice. Mr. McLaws proposed an accomplice instruction (based on WPIC 6.05), which reads:

> The testimony of an accomplice, given on behalf of the plaintiff, should be subjected to careful examination in the light of other evidence in the case, and should be acted upon with great caution. You should not find the defendant guilty upon such testimony alone unless, after carefully considering the testimony, you are satisfied beyond a reasonable doubt of its truth.

The law regarding accomplice instructions was recently clarified in *State v. Harris,* 102 Wn.2d 148, 685 P.2d 584 (1984). The *Harris* court, at page 155, enunciated the following 3–part rule:

> (1) it is always the better practice for a trial court to give the cautionary instruction whenever accomplice testimony is introduced; (2) failure to give this instruction is always reversible error when the prosecution relies *solely* on accomplice testimony; and (3) whether failure to give this instruction constitutes reversible error when the accomplice testimony is corroborated by independent evidence depends upon the extent of corroboration. If the accomplice testimony was substantially corroborated by testimonial, documentary or circumstantial evidence, the trial court did not commit reversible error by failing to give the instruction.

Here, the trial court in rejecting the accomplice instruction, determined there was sufficient corroborative testimony to make such an instruction unnecessary. The record includes the following corroborating evidence: testimony of Henry Bronson that he saw Mr. Johnson and Mr. McLaws

together following the incident, that Mr. Johnson's face was cut, that Mr. Johnson later admitted to having committed the crime; testimony of Emily Lehinger that Mr. Johnson, Mr. McLaws, and Mr. Paradiso were together a few hours before the crime, that they left together in Mr. Johnson's van at 2 a.m. and returned together at approximately 3:30 to 4 a.m., that Mr. Johnson was heard to say "I had to kill him", that both Mr. Johnson and Mr. McLaws carried handguns, that Mr. McLaws appeared to be hurt.

Mr. McLaws argues the facts of *State v. Calhoun,* 13 Wn. App. 644, 536 P.2d 668 (1975) are similar to the evidence connecting him to the crime; thus, his conviction should be reversed. However, in *State v. Calhoun, supra* at 648, the court noted the only corroborating evidence connecting defendant to the crime consisted of the fact that the defendant "had a gun and holster in a paper sack in the bedroom of the witness Smith's house for a short period of time . . ." Applying the *Harris* rule, we find the accomplice testimony was sufficiently corroborated by independent evidence.

Next, Mr. Johnson and Mr. McLaws claim prosecutorial misconduct prejudiced their right to a fair trial. Specifically, they claim the prosecutor improperly argued Ms. Whitford's inconsistent statements could be used by the jury as substantive proof in violation of the court's instruction. We disagree.

In order to determine whether prosecutorial misconduct was present, the reviewing court "must determine whether there was substantial likelihood that the misconduct affected the jury's verdict, thereby depriving the defendant of his right to a fair trial". *State v. Evans,* 96 Wn.2d 1, 5, 633 P.2d 83 (1981). During closing argument the prosecutor informed the jury that it would be required to consider whether "Cindy Whitford [was] telling us the truth when she was under oath in this chair and testifying". The prosecutor then stated that in making this determination, the jury should consider "some other things that were admitted in relation to her testimony." Included in these

"other things" was a statement to the police that Mr. McLaws showed her marijuana packaged in Mickey Mouse sandwich bags, and that Mr. McLaws owned a gun which he had loaded with the type of ammunition which killed the victim. We find no error. Generally, counsel is given reasonable latitude to draw and express inferences and deductions from the evidence, including inferences as to a witness' credibility. *State v. Adams,* 76 Wn.2d 650, 660, 458 P.2d 558 (1969), *rev'd in part,* 403 U.S. 947, 29 L. Ed. 2d 855, 91 S. Ct. 2273 (1971).

> The jurors are the judges of the credibility of witnesses, and are entitled to draw reasonable inferences from the evidence before them as to the truthfulness of any particular witness. Therefore counsel, if he deem such a course advisable, may argue as to what inferences may or should be drawn, and thus attempt to demonstrate from the record that a particular witness has wilfully testified falsely. Such an argument should, however, be conducted calmly and logically and in a manner to direct the attention of the jurors to the logical inferences to be drawn, rather than to incite their prejudices.

*Borland v. Pacific Meat & Packing Co.,* 153 Wash. 14, 19, 279 P. 94 (1929); *accord, State v. Gosby,* 11 Wn. App. 844, 526 P.2d 70 (1974), *aff'd as modified,* 85 Wn.2d 758, 539 P.2d 680 (1975).

■ Both Mr. Johnson and Mr. McLaws emphasized in closing argument that Ms. Whitford's inconsistent statements could only be considered in terms of her credibility. Finally, the court instructed the jury that:

> Counsel's remarks, statements and arguments are intended to help you understand the evidence and apply the law. They are not evidence, however, and you should disregard any remark, statement or argument which is not supported by the evidence or the law as given to you by the court.

Jurors are presumed to follow instructions given by the court. *State v. Kroll,* 87 Wn.2d 829, 835, 558 P.2d ·173 (1976); *State v. Harvey,* 34 Wn. App. 737, 740, 664 P.2d 1281, *review denied,* 100 Wn.2d 1008 (1983).

Next, Mr. McLaws contends he was unfairly prejudiced by the admission of pry bars, ski masks, and ammunition since these items were never identified or connected with the crime charged. We disagree.

The trial court has wide discretion to determine the admissibility of physical evidence and, absent manifest abuse, an appellate court will not interfere with that decision. *State v. Bergen,* 13 Wn. App. 974, 976, 538 P.2d 533 (1975), *review denied,* 86 Wn.2d 1009 (1976); *State v. Coe,* 101 Wn.2d 772, 782, 684 P.2d 668 (1984). "Physical evidence is admissible against the accused so long as it is shown to have some bearing upon the facts at issue." *State v. Smith,* 74 Wn.2d 744, 769, 446 P.2d 571 (1968), *vacated in part,* 408 U.S. 934, 33 L. Ed. 2d 747, 92 S. Ct. 2852 (1972), *overruled on other grounds in State v. Gosby,* 85 Wn.2d 758, 539 P.2d 680 (1975); *State v. Spadoni,* 137 Wash. 684, 243 P. 854 (1926). The fact that witnesses do not positively identify evidence does not diminish its admissibility. *See State v. Smith, supra* at 768 (statement by the witness that "the coat looked like the jacket the shorter man was wearing on the night of the . . . murder" was sufficient); *State v. Bergen, supra* at 977 (caps and ski masks admitted into evidence after the victims testified the items were similar to those worn by their attacker). Here, Ms. Klassen testified the ski masks were similar to those worn by the assailants, and the pry bars found on her front porch by the police had not been placed there by the occupants of the house. The ammunition recovered from Mr. McLaws at the time of his arrest was identical to that used in the killing. We find no error.

Next, Mr. Johnson and Mr. McLaws challenge the constitutionality of the May 1, 1983, search of Mr. McLaws' vehicle. They claim evidence seized during the search should have been suppressed.

At trial, the State presented evidence that Mr. McLaws consented to the search. A consent form signed by Mr. McLaws was admitted into evidence without defense objection. Voluntary consent to a search acts as a waiver of

the constitutional right against unreasonable searches and seizures. *State v. Rodriguez,* 20 Wn. App. 876, 878, 582 P.2d 904 (1978). Here, the State met the burden of showing voluntary consent since Mr. McLaws testified he gave the officer permission to search the vehicle. *State v. Shoemaker,* 85 Wn.2d 207, 210, 533 P.2d 123 (1975). Although consent may be valid, the consenting party may still limit the scope of the search. *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965). Mr. McLaws now claims he limited the scope of that search to marijuana, but the record does not support his claim. At trial Mr. McLaws claimed he did not know the ammunition was in his car when he gave his consent. The fact the search bore fruit beyond that which the consenter contemplated does not render a lawful consensual search illegal. We conclude the evidence was not seized as the result of an illegal search.

Next, Mr. Johnson and Mr. McLaws contend the information charged first degree felony murder while in the commission of first degree robbery; yet, during trial the prosecutor referred to a burglary and a rape. They claim they were, in effect, placed on trial for a crime for which they were never charged.

Generally, evidence of the commission of other crimes may not be admitted into evidence in a criminal prosecution. However, collateral crimes are admissible for certain specific limited purposes. *State v. Tharp,* 96 Wn.2d 591, 637 P.2d 961 (1981). The *Tharp* court noted that where uncharged crimes are part of an unbroken sequence of incidents tied to the defendant, "[e]ach offense [becomes] a piece in the mosaic necessarily admitted in order that a complete picture be depicted for the jury." *State v. Tharp, supra* at 594. We find no error.

Next, Mr. Johnson and Mr. McLaws contend, pro se, a new trial should be granted on the ground of newly discovered evidence because Mr. Paradiso has advised them of his wish to recant earlier testimony. Resolution of this matter cannot be resolved by resort to the record. *See State v. King,* 24 Wn. App. 495, 504, 601 P.2d 982 (1979). Generally,

it is within the trial court's discretion to determine whether to grant a new trial; however, "[w]hen a defendant is convicted *solely* on the testimony of the now recanting witness, . . . it is an abuse of discretion not to grant a new trial". *State v. Rolax,* 84 Wn.2d 836, 838, 529 P.2d 1078 (1974). Where there is independent evidence corroborating the testimony of the recanting witness, the defendant is not entitled as a matter of law to a new trial. *State v. Rolax, supra* at 838; *State v. Wynn,* 178 Wash. 287, 288, 34 P.2d 900 (1934). Rather, such a determination rests in the sound discretion of the trial court. *State v. Wynn, supra.*

Since Mr. Johnson and Mr. McLaws failed to move for a new trial under CrR 7.6, or for relief from judgment under CR 60(b)(3),[3] the trial court had no opportunity to consider Mr. Paradiso's affidavit. *State v. Owen,* 24 Wn. App. 130, 135, 600 P.2d 625 (1979). Mr. Johnson's and Mr. McLaws' failure to exhaust their posttrial remedies precludes appellate review. The proper procedure now is to bring an independent proceeding by way of personal restraint petition under RAP 16.3, so the matter may be remanded to the Superior Court for an evidentiary hearing. RAP 16.11(b); *State v. Davis,* 25 Wn. App. 134, 137, 605 P.2d 359 (1980); *State v. Rolax, supra.*

Finally, Mr. Johnson and Mr. McLaws claim the State's failure to preserve the victim's blood sample makes it impossible to determine if an actual rape occurred. We disagree.

The State's duty to preserve material evidence is derived from the duty to disclose exculpatory evidence. *State v. Laureano,* 101 Wn.2d 745, 759, 682 P.2d 889 (1984); *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). The Supreme Court extended the application of the *Brady* rule, *i.e.,* the duty to preserve material evidence, to governmental loss or destruction of such evidence in *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976). *State v. Lau-*

---

[3]*See Wright v. Morris,* 85 Wn.2d 899, 540 P.2d 893 (1975), for the procedure under former CrR 7.7 for granting postconviction relief.

*reano, supra* at 759. However, in *State v. Vaster,* 99 Wn.2d 44, 659 P.2d 528 (1983), the court considered the problem of inadvertent or good faith loss or destruction of evidence. "[U]nder these circumstances the defendant has the burden of showing there is a reasonable possibility the missing evidence would have affected his ability to present a defense." *State v. Laureano, supra* at 760. In addition, the "reasonable possibility" must be balanced by the court against the prosecution's ability to have preserved the evidence, the nature of the missing evidence, and the circumstances surrounding its loss. *State v. Vaster, supra* at 52.

Although Mr. Johnson and Mr. McLaws rely on *State v. Wright, supra,* the *Laureano* court noted that "'[i]n *Wright* the evidence which was destroyed was the totality of the direct evidence in the case.'" *State v. Laureano, supra* at 760 (quoting *State v. Canaday,* 90 Wn.2d 808, 816–17, 585 P.2d 1185 (1978)). Here, the loss of evidence complained of consists of blood samples from the victim, Edward Prather, and lack of lab reports on all the cigarette butts taken from the bedroom.

■ The police are not required to search for exculpatory evidence, conduct tests, or exhaustively pursue every angle on a case. *State v. Judge,* 100 Wn.2d 706, 717, 675 P.2d 219 (1984). Here, the State was not obligated to develop the defense theory that proof of Mr. Prather's blood type may have served to impeach Ms. Klassen. The State expert tested a sample of the cigarette butts. Defense counsel could have retained an expert to test the remaining butts. *Accord, State v. Judge, supra.* Thus, we find no error.

Judgment of the trial court is affirmed.

McINTURFF, A.C.J., and MUNSON, J., concur.