# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49163-0-II |
| Respondent, | |
| v. | |
| BRICE SCOT NOWACKI, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Brice Nowacki appeals his convictions of forgery and making a false or misleading statement to a public servant.  Nowacki argues that (1) the trial court erred by admitting two prior written statements, (2) he was denied his right to a fair trial due to improper opinion testimony by an officer, (3) the prosecutor committed misconduct during closing by arguing facts not in evidence, (4) his trial counsel was ineffective for failing to object to the opinion testimony and the prosecutor's remarks at closing, and (5) this court should not impose appellate costs.  We affirm Nowacki's convictions.

FACTS

I.  BACKGROUND

Justin Dunaway possessed several stolen checks from Nichole Brese's closed checking account.  In July 2015, Dunaway asked Austin Malakowsky to cash some signed checks from Brese's account in exchange for money.  Malakowsky successfully cashed a number of forged checks.

In late July 2015, Malakowsky, Dunaway, and Brice Nowacki, a friend of Malakowsky, all met. After this meeting, Malakowsky asked Nowacki to cash one of Brese's check in exchange for money. Nowacki later agreed to cash the check at Fibre Federal Credit Union where Nowacki had a checking account.

On July 30, 2015, Malakowsky picked up Nowacki and drove him to Fibre Federal Credit Union. On the way to the credit union, Malakowsky gave Nowacki one of Brese's checks made out to "Brice Caski." A Verbatim Report of Proceedings (VRP) at 71. The check also included a note in the memo line which stated, "For work." A VRP at 71. After dropping Nowacki off at Fibre Federal Credit Union, Malakowsky left. Nowacki entered the credit union and handed a teller the check and his identification. Nowacki told the teller that he was cashing a check for a male friend named Nichole Brese. The teller contacted Brese's credit union and learned that Brese's account had been closed. The teller notified the bank manager then the police were called.

Sergeant Scott Neves responded to the call and approached Nowacki, who was exiting the credit union. Sergeant Neves asked Nowacki what was "[g]oing on?" A VRP at 103. Nowacki responded that he was at the credit union to cash a check. When Sergeant Neves told Nowacki, "That's why I'm here, too," Nowacki stated, "S**t, I just knew it." A VRP at 104.

Other officers soon arrived on the scene as did a white SUV (sports utility vehicle), later determined by officers to be driven by Malakowsky. Nowacki then told Sergeant Neves the person he was cashing the check for was inside the white SUV. Sergeant Neves and Nowacki reentered the credit union, and Sergeant Neves spoke with the credit union employees.

After speaking with the employees, Sergeant Neves detained Nowacki. Nowacki then told Sergeant Neves that Nichole Brese was his male friend who he knew personally. Nowacki also told Sergeant Neves that Brese had given him the check to cash because Brese did not have a bank account. Nowacki also explained that Malakowsky had cashed several checks for Nichole Brese. Sergeant Neves took Malakowsky into custody.

After detaining Malakowsky, Sergeant Neves recontacted Nowacki, who then apologized and told Sergeant Neves that he had previously lied about Brese's identity and that he did not want to get into trouble. Nowacki also told Sergeant Neves that it was Malakowsky who had given him the check to cash.

Later, another officer presented a photo of Justin Dunaway to Nowacki and Malakowsky. Nowacki then informed the officers that he had actually received the check from Dunaway, and not Malakowsky, as he had previously stated.

The officers then transported Nowacki and Malakowsky to the police station. At the station, a police officer obtained a statement from Malakowsky. Malakowsky's statement read:

> I met a guy named Justin Dunaway he told me he needed help cashing his checks. So I helped him I didn't know where the checks came from or how he got them he gave me about 100 per check and I think 5 checks were deposited I did not know they were fake. I thought I was helping a friend but instead I was being set up.

Ex. 2.

The State charged Nowacki with forgery and making a false or misleading statement to a public servant. The State separately charged Malakowsky for his involvement with cashing Brese's checks. Malakowsky later pleaded guilty to his charges. After pleading guilty, Malakowsky authored a second statement. Malakowsky gave this statement to Nowacki's defense counsel. Malakowsky's second statement stated:

3

I conned my friend Brice into cashing a fake check. I told him since he needed money if he cashed this check he would get a good portion of the money that comes out of it he had no clue that what he was doing was illegal and Brice Nowacki is the man I conned.

Ex. 3.

## II. TRIAL

At Nowacki's trial, witnesses testified to the facts as described above. In addition, Malakowsky testified that it took him a day to fully convince Nowacki to cash a check due to Nowacki's initial skepticism. When asked about whether he tried to explain to the police on the day of the incident that Nowacki was not involved, Malakowsky responded that he "tried to" but that he could not "exactly remember what happened that day." A VRP at 137. Malakowsky also testified that he was trying to do what he could to help Nowacki, but that he was also trying to save himself. Malakowsky stated that he knew the checks were fake.

Malakowsky identified exhibit 2 as the same statement that he had given to police. Malakowsky verified that exhibit 2 did not contain any information about encouraging Nowacki to cash a check.

Malakowsky also testified about a later statement he gave to Nowacki's defense counsel, which was marked as exhibit 3. Malakowsky verified that he wrote out the statement in Nowacki's defense counsel's office sometime after pleading guilty to his own charges.

The State moved to admit both statements into evidence. Nowacki objected on the ground that there was an "improper foundation for [a] *Smith*[1] [a]ffidavit." A VRP at 145

---

[1] *State v. Smith*, 97 Wn.2d 856, 651 P.2d 207 (1982).

(alteration in original). The trial court overruled the objection as to exhibit 2. However, the court sustained the objection as to exhibit 3.

The State then continued to question Malakowsky regarding exhibit 3. When asked how he came to write the statement, Malakowsky responded that he decided that he "needed to tell the truth." A VRP at 145. The State again moved to admit the statement into evidence and Nowacki again objected, asserting the same objection, that the State had not established a proper foundation for a "*Smith* affidavit." The trial court overruled the objection and admitted exhibit 3.

Nowacki also testified at trial. He testified that Malakowsky asked him to cash a check but that he was reluctant to do so. He stated that he originally refused Malakowsky's proposal but that Malakowsky later convinced him to cash the check by telling him that it was "legal and safe." A VRP at 157. Nowacki stated that although he had met Dunaway one time prior to the incident, he did not know Dunaway's real name until the officers presented him with Dunaway's photograph that referenced Dunaway's name. Nowacki also testified that he initially thought that Dunaway's name was Nichole Brese based on the name printed on the check.

Regarding the day of the incident, Nowacki testified that he originally thought that the check that he received from Malakowsky was legitimate but by the time Sergeant Neves approached him, he started to "connect the dots" regarding the validity of the check. A VRP at 164. Nowacki also admitted that he lied to Sergeant Neves about knowing Nichole Brese. Nowacki admitted that he never mentioned his reluctance to cash the check to Sergeant Neves. He also admitted that he had discussed the check-cashing plan with his mother, who told him that it "was a bad idea." A VRP at 169.

During Sergeant Neves's testimony, the State specifically asked him his opinion on when people confess to police. The State asked if people "just always confess to everything" during a police investigation. A VRP at 182. Sergeant Neves responded that "[m]ost people lie to the police" and do not confess. A VRP at 182. The State then asked if Sergeant Neves ever expected Nowacki to tell him that the checks were fake. Nowacki objected to this question before Sergeant Neves responded. The trial court sustained the objection and the State did not ask any other related questions.

Nowacki then asked Sergeant Neves a series of questions regarding confessions. Nowacki specifically asked Sergeant Neves whether, in his experience, people sometimes do confess, to which Sergeant Neves responded that "they do" and added, "Sometimes it takes a little investigation, but at times they do confess." A VRP 183.

At the close of trial, the court instructed the jury and included an instruction about arguments made the by attorneys during trial. The trial court stated:

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the Exhibits, the law as contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

VRP (June 1, 2016) at 18.

During closing arguments, the prosecutor commented about the copy of the check presented to the jury and stated, "First of all, we know the check, in and of itself, is off an email account photo."[2] VRP (June 1, 2016) at 21. Nowacki did not object to the prosecutor's

---

[2] The check's image was admitted as an exhibit at trial.

6

comments about the email account photo. Later during closing, the prosecutor discussed

Nowacki's interaction with the teller at Fibre Federal Credit Union and stated, "So he tells her: I

have a guy friend, Nichole, who has a fellow by the name, Ron." (June 1, 2016) at 25. Nowacki

did not object to the prosecutor's comments about a person named Ron.

The jury then found Nowacki guilty of forgery and making a false statement to a public

servant, as charged. Nowacki appeals his convictions.

ANALYSIS

I. PRIOR WRITTEN STATEMENTS

Nowacki argues that the trial court erred by admitting Malakowsky's two prior written

statements (exhibits 2 and 3). Nowacki contends that these exhibits were hearsay and did not

meet the admissibility requirements of a *Smith* affidavit or ER 801(d)(1). The State responds

that the trial court properly admitted Malakowsky's prior statements because the statements were

admissible for impeachment purposes. We hold that the trial court improperly admitted both

exhibits 2 and 3, but that the admission of the exhibits was harmless.

A.    *Legal Principles*

We review the trial court's decision to admit or exclude evidence for an abuse of

discretion. *State v. Ashley*, 186 Wn.2d 32, 38-39, 375 P.3d 673 (2016). An abuse of discretion

occurs when the trial court bases its decision on untenable grounds or exercises discretion in a

manner that is manifestly unreasonable. *State v. Zunker*, 112 Wn. App. 130, 140, 48 P.3d 344

(2002). If the trial court bases its evidentiary ruling on an incomplete legal analysis or a

misapprehension of legal issues, the ruling may be an abuse of discretion. *State v. Nieto*, 119

Wn. App. 157, 161, 79 P.3d 473 (2003).

"Hearsay" is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Prior statements of testifying witnesses are considered hearsay unless they fall under an exclusion or exception to the hearsay rule. ER 801(d)(1).

Under ER 801(d)(1), a prior inconsistent statement is not hearsay and may be admitted as substantive evidence if: (i) the declarant testified at trial and was subject to cross-examination, (ii) the statement was inconsistent with the declarant's testimony, (iii) it was given under oath subject to penalty of perjury, and (iv) it was provided at a trial, hearing, or other proceeding, or in a deposition. A "prior inconsistent statement" is a statement made by the witness out of court which is inconsistent with the witness's testimony. ER 613, 801(d)(1)); *see State v. Johnson*, 40 Wn. App. 371, 378, 699 P.2d 221 (1985).

In *State v. Smith*, 97 Wn.2d 856, 651 P.2d 207 (1982), our Supreme Court considered whether a sworn statement given during a police station interrogation qualified as an "other proceeding" under ER 801(d)(1). *Smith*, 97 Wn.2d at 860-61. Such statements are commonly referred to as a *Smith* affidavit. In *Smith*, the Supreme Court held that a sworn statement given during a police station interrogation is admissible as substantive evidence under ER 801(d)(1) as long as "[m]inimal guarantees of truthfulness" were met. *Smith*, 97 Wn.2d at 862. But *Smith* did not define "minimal guarantees of truthfulness" because "each case depends on its facts with reliability the key." *Smith*, 97 Wn.2d at 861, 863.

After *Smith*, in assessing the reliability of a prior inconsistent statement given to police, courts consider whether (1) the witness made the statement voluntarily, (2) there were minimal guarantees of truthfulness, (3) the statement was given following one of the legally permissible

8

methods for determining whether there was probable cause, and (4) the witness was later subject to cross-examination. *Nieto*, 119 Wn. App. at 162-63.

B.     *The Trial Court Improperly Admitted the Prior Written Statements*

Nowacki argues that Malakowsky's prior statements contained in exhibits 2 and 3 were not admissible under ER 801(d)(1) because they were not inconsistent with Malakowsky's trial testimony.  Nowacki also argues that the State did not provide evidence from which the court could properly determine if the statements met the requirements of a *Smith* affidavit.  We hold that the exhibits were improperly admitted, but that this error was harmless.

1.  Exhibit 2

Nowacki argues that the statement in exhibit 2 was not inconsistent with Malakowsky's trial testimony.  Nowacki also argues that the trial court improperly admitted exhibit 2 as a *Smith* affidavit.  We hold that although Malakowsky's statements in exhibit 2 were inconsistent with his trial testimony, the trial court improperly admitted exhibit 2 as a *Smith* affidavit.  We further hold that this error was harmless.

We first hold that Malakowsky's statements in exhibit 2 were inconsistent with his later trial testimony.  In exhibit 2, Malakowsky reported that he did not know the checks were fake and that he had been conned by Dunaway.  Conversely, at trial Malakowsky testified that he knew the checks were fake at the time he gave them to Nowacki.  This record clearly shows that Malakowsky's prior statement contradicts his trial testimony.  *See Johnson*, 40 Wn. App. at 377.  Therefore, contrary to Nowacki's argument, the statements in exhibit 2 were inconsistent statements as contemplated by ER 801(d)(1).

However we also hold that the trial court erred when it admitted exhibit 2 as a *Smith* affidavit.

We are unable to determine whether the circumstances under which Malakowsky gave his statement satisfy the additional *Smith* reliability factors because the trial court failed to inquire into those factors or otherwise analyze the reliability of Malakowsky's statement.

The record on appeal is not developed enough to show the voluntariness of the statement in exhibit 2 or whether the statement contained minimal guarantees of truthfulness as required under *Smith*. Had the court considered any of the *Smith* factors, the court might have determined that exhibit 2 was sufficiently reliable. However, without those findings, we cannot say that Malakowsky's statement to police had the sufficient indicia of reliability required of a *Smith* affidavit. *See Nieto*, 119 Wn. App. at 162-63 (holding that the court must analyze the facts of the case and the purposes of the hearsay rule in determining whether a prior statement provides minimal guarantees of truthfulness under *Smith*).

Therefore, because the trial court based its evidentiary ruling on an incomplete legal analysis, the trial court abused its discretion in admitting exhibit 2 as a *Smith* affidavit. *See Nieto*, 119 Wn. App. at 157. However, as discussed below, the court's error was harmless.

2.    Exhibit 3

Nowacki also argues that the statement in exhibit 3 was not inconsistent with Malakowsky's trial testimony, and therefore, the trial court improperly admitted the statement as a prior inconsistent statement under ER 801(d)(1). We agree.[3]

---

[3] Because we find that exhibit 3 was not an inconsistent statement under ER 801(d)(1), we do not address Nowacki's arguments that exhibit 3 did not meet the requirements of a *Smith* affidavit.

In exhibit 3, Malakowsky stated that he had "conned" Nowacki into cashing the check and that Nowacki had "no clue that what he was doing was illegal." At trial, Malakowsky testified that he conned and encouraged Nowacki into cashing the check. When asked about how he came to write the statement in exhibit 3, Malakowsky testified that he decided that he "needed to tell the truth." A VRP at 145.

Taken as a whole, there was no clear inconsistency between Malakowsky's trial testimony and his prior statement. *See State v. Newbern*, 95 Wn. App. 277, 294, 975 P.2d 1041 (1999) (holding that, when taken as a whole, testimony that affords some indication that it was different than other testimony is inconsistent). Because there was no inconsistency between Malakowsky's trial testimony and his prior statement, the trial court erred in admitting exhibit 3.

## C. The Admission of the Statements Did Not Prejudice Nowacki

Although the trial court erred in admitting exhibit 2 and exhibit 3, we will not reverse due to an error in admitting evidence where the error does not prejudice the defendant. *State v. Thomas*, 150 Wn.2d 821, 871, 83 P.3d 970 (2004). An evidentiary error is not prejudicial unless, within reasonable probabilities, the trial's outcome would have differed had the error not occurred. *Thomas*, 150 Wn.2d at 871.

Here, it is not reasonably probable that the trial outcome would have differed if the trial court had excluded Malakowsky's statements. Importantly, the jury still heard Malakowsky's testimony regarding the substance of both prior written statements. At trial, prior to the

---

However we do note that exhibit 3 was not a sworn statement given during a police station interrogation; thus, calling into doubt whether *Smith* applies.

admission of the statements into evidence, Malakowsky testified to making the statements and the State questioned him about the contents of the two statements.

Moreover, the jury had other evidence from which they could determine that Nowacki was guilty of forgery and making a false statement. It was uncontested that Nowacki presented a forged check for payment. The main question for the jury was whether Nowacki was an innocent patsy, or whether he knew the check was forged. Evidence of Nowacki's own actions and statements largely supported the State's case.

Initially, upon Sergeant Neves informing Nowacki that he was there to investigate the cashing of a check, Nowacki stated "S\*\*t, I just knew it." A VRP at 104. Then Nowacki gave several conflicting statements to Sergeant Neves at the scene. He told Sergeant Neves that Nichole Brese was his male friend who he knew personally. Nowacki also told Sergeant Neves that Brese had given him the check to cash because Brese did not have a bank account. Nowacki then told Sergeant Neves that Malakowsky had cashed several checks for Nichole Brese. Nowacki then told Sergeant Neves that he had previously lied about Brese's identity and that he did not want to get into trouble. Nowacki then said that it was Malakowsky who had given him the check to cash.

At trial, Nowacki testified that he only began to "connect the dots" that the check was not good after seeing Sergeant Neves at the bank. Yet he admitted that his mother had tried to warn him about cashing the check. With this evidence, there is no reasonable probability that the trial's outcome would have differed had Malakowsky's two prior written statements not been admitted.

12

Accordingly, because the trial court's evidentiary ruling did not have the reasonable probability of affecting the trial's outcome, we hold that the trial court's admission of exhibit 2 and exhibit 3 was harmless.

## II. OPINION TESTIMONY

Nowacki argues for the first time on appeal that Sergeant Neves provided impermissible opinion testimony about Nowacki's guilt and veracity. Nowacki asserts that the alleged opinion testimony violated his constitutional right to a fair trial and trial by jury. We disagree.

It is generally improper for a witness to offer testimony concerning the credibility of another witness. *State v. Demery*, 144 Wn.2d 753, 764, 30 P.3d 1278 (2001). Such testimony is unfairly prejudicial to a defendant and invades the exclusive province of the jury. *Demery*, 144 Wn.2d at 759. A witness's expression of personal belief about a witness's veracity is inappropriate opinion testimony. *State v. Perez–Valdez*, 172 Wn.2d 808, 817, 265 P.3d 853 (2011).

Where there is no objection to allegedly improper witness testimony before the trial court, a party seeking to raise the issue on appeal must demonstrate that the error is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "Manifest" error requires a showing of actual prejudice. *Kirkman*, 159 Wn.2d at 935. Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case. *Kirkman*, 159 Wn.2d at 935.

"An explicit or nearly explicit" opinion on the defendant's guilt or a victim's credibility can constitute manifest error. *Kirkman*, 159 Wn.2d at 936. But if the testimony does not directly

comment on the defendant's guilt or veracity, helps the jury, and is based on inferences from the evidence, it is not improper opinion testimony. *State v. Johnson*, 152 Wn. App. 924, 930-31, 219 P.3d 958 (2009). We preview the merits of the claimed constitutional error to determine whether the argument is likely to succeed. *State v. Nguyen*, 165 Wn.2d 428, 433-34, 197 P.3d 673 (2008).

Here, the State asked Sergeant Neves whether he "expected" Nowacki to tell him the checks were fake. VRP (Vol. A) at 182. Nowacki objected to the question and the court sustained the objection. Sergeant Neves never answered the State's question and the State did not ask any other related questions. Though Sergeant Neves was asked about his opinion on Nowacki's veracity, Sergeant Neves made no comment on Nowacki's guilt or veracity in response to this question.

The State also asked Sergeant Neves if people "just always confess to everything" during a police investigation. VRP (Vol. A) at 182. Sergeant Neves responded that "[m]ost people lie to the police" and do not confess. A VRP at 182. Sergeant Neves's response was not a direct personal opinion as to Nowacki's veracity but rather an opinion based on Sergeant Neves's experience with police investigations. *See State v. Sanders*, 66 Wn. App. 380, 388, 832 P.2d 1326 (1992) (holding that an officer's testimony was not an improper opinion on the defendant's guilt, because the testimony was only an inference based on the officer's experience).

It is clear that Sergeant Neves did not express any direct opinion or explicit expression of personal belief as to Nowacki's guilt or veracity. Consequently, Nowacki fails to show a manifest error affecting a constitutional right, and thus, he has waived this issue on appeal.

### III. PROSECUTORIAL MISCONDUCT

Nowacki argues that the prosecutor committed misconduct by referring to facts not in evidence during closing argument. Nowacki specifically contends that it was misconduct for the prosecutor to make a statement that the copy of the check presented to the jury was from an "[e]-mail account photo" and to comment that Nowacki told the credit union teller that Nowacki had a "guy friend, Nichole, who has a fellow by the name, Ron." Br. of Appellant at 19 (quoting VRP (June 1, 2016) at 21). Nowacki argues that the prosecutor's statements prejudiced him because the issues at trial were Nowacki's credibility and whether Nowacki knew the check was forged. The State argues that the prosecutor's statements were simple misstatements and that the trial court properly instructed the jury on statements made during closing.[4] We agree with Nowacki that the State's comments were improper references to facts not in evidence, but we hold that the comments were not prejudicial.

To establish prosecutorial misconduct, the defendant must prove that the prosecuting attorney's remarks were both improper and prejudicial. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). Depending on whether the defendant objected to the improper comments, we analyze resulting prejudice under one of two standards of review. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Where, as here, the defendant did not object at trial, he is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61. Under this heightened standard, the defendant must show that (1) no curative

---

[4] The State fails to cite to any authority to support its assertions that a simple misstatement made by the prosecutor is not considered misconduct.

instruction would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict. *Emery*, 174 Wn.2d at 761.

We review a prosecutor's statements during closing argument in the context of the total argument, the issues in the case, the evidence, and the jury instructions. *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008). It is improper for a prosecutor to assert during closing argument facts not admitted as evidence during trial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 705, 286 P.3d 673 (2012) (plurality opinion). This court accords a prosecutor some latitude to argue reasonable inferences from facts in evidence. *Warren*, 165 Wn.2d at 30.

Here, the prosecutor's comments about an "e-mail account photo" and a man named "Ron" were not statements that could be inferred from any other facts in the record before the jury. *See Warren*, 165 Wn.2d at 30. Therefore, the prosecutor's statements were improper and the prosecutor committed misconduct during closing argument. *See Emery*, 174 Wn.2d at 760.

Nevertheless, because Nowacki did not object to the State's comments, we examine whether a curative instruction may have obviated any prejudicial effect and whether it resulted in a substantial likelihood of affecting the jury verdict. *Emery*, 174 Wn.2d at 760-61. Here, although the prosecutor's statements were improper, it is clear that the prosecutor's comments were not so flagrant or ill-intentioned that a curative instruction from the court could not have cured any resulting prejudice. *See Emery*, 174 Wn.2d at 760. Moreover, this misconduct was not likely to have altered the outcome of this case. These statements are benign and the jury had other evidence from which to determine Nowacki's guilt.

16

Because these statements were not so flagrant and ill-intentioned that a curative instruction could not have cured any prejudice, Nowacki has failed to preserve this issue for review and we do not consider it further.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Nowacki further argues that he received ineffective assistance of counsel at trial. Specifically, Nowacki claims that his trial counsel was ineffective for failing to object to Sergeant Neves's alleged opinion of guilt and veracity testimony and to the statements made by the prosecutor during closing arguments. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We review ineffective assistance claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

In order to show that he received ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). A defense counsel's performance is deficient if it falls below an objective standard of reasonableness and was not based on a tactical decision. *State v. Beasley*, 126 Wn. App. 670, 686, 109 P.3d 849 (2005).

When reviewing deficiency, we strongly presume that counsel was effective. *State v. McLean*, 178 Wn. App. 236, 247, 313 P.3d 1181 (2013), *review denied*, 179 Wn.2d 1026 (2014). To rebut this presumption, the defendant bears the burden of establishing the absence of any conceivable legitimate tactic explaining counsel's performance. *See Reichenbach*, 153 Wn.2d at

130. Additionally, where the appellant claims ineffective assistance based on his trial counsel's failure to object, the appellant must also show that such an objection, if made, would have been successful in order to establish deficient performance. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007).

To show prejudice, a defendant must show a reasonable possibility that, but for counsel's purportedly deficient conduct, the outcome of the proceeding would have differed. *Reichenbach*, 153 Wn.2d at 130. Because both prongs must be met, a failure to show either prong will end the inquiry. *State v. Fredrick*, 45 Wn. App. 916, 923, 729 P.2d 56 (1986).

1. Counsel's failure to object to Sergeant Neves's testimony was not improper

Nowacki argues that his counsel was ineffective for failing to object to Sergeant Neves's testimony about whether people generally confess or lie to the police because the testimony was an improper opinion on Nowacki's guilt and veracity. We disagree.

Nowacki first fails to demonstrate that his trial counsel performed deficiently. A trial counsel's decisions regarding whether and when to object fall firmly within the category of strategic or tactical decisions. *Reichenbach*, 153 Wn.2d at 130. It cannot be said that trial counsel's failure to object to Sergeant Neves's testimony was not tactical, especially when trial counsel questioned Sergeant Neves regarding his opinion on the tendency of people to confess during investigations.

Additionally, Nowacki fails to show that an objection to Sergeant Neves's testimony, if made, would have been successful. *See Gerdts*, 136 Wn. App. at 727. It is generally improper for a witness to opine that the defendant is guilty; to do so is to invade the jury's exclusive province. *Demery*, 144 Wn.2d at 759. To determine whether a witness's statement is improper

18

opinion testimony on the defendant's guilt, we consider the circumstances of the case, including the type of witness involved, the nature of the testimony, the nature of the charges, the type of defense, and other evidence before the trier of fact. *City of Seattle v. Heatley*, 70 Wn. App. 573, 579, 854 P.2d 658 (1993). Testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony. *Heatley*, 70 Wn. App. at 578.

Sergeant Neves testified about his own opinion and perception, namely, that most people lie to the police and do not confess. The State asked Sergeant Neves if, during investigations "people just always confess to everything?" A VRP at 182. Sergeant Neves did not respond with any testimony as to whether he thought Nowacki would confess to police. Rather, Sergeant Neves simply provided testimony regarding whether people confess in the general sense. At no time did Sergeant Neves give a direct or nearly direct opinion as to Nowacki's guilt or veracity. Therefore, it is not likely that an objection to Sergeant Neves's testimony would have been successful. *See Heatley*, 70 Wn. App. at 579-80.

Nowacki's trial counsel's decision to not object to Sergeant Neves's trial testimony did not fall below an objective standard of reasonableness. Because he cannot show deficient performance, Nowacki's ineffective assistance of counsel claim on this ground fails.

2. Counsel's failure to object to the State's misconduct did not prejudice Nowacki

Nowacki next asserts that there was no strategic reason for his trial counsel's failure to object to the State's improper statements during closing and that he was prejudiced. We disagree.

As discussed above, the State's comments during closing argument were benign. Even assuming that Nowacki's counsel was ineffective for not objecting, Nowacki cannot show any prejudice from these statements. Accordingly, we hold that Nowacki's trial counsel did not provide ineffective assistance of counsel.

## V.  COSTS ON APPEAL

Nowacki requests that we refrain from awarding appellate costs against him because he is indigent. A commissioner of this court will consider whether to award appellate costs in due course under RAP 14.2 if the State files a cost bill and if Nowacki objects to that cost bill.

## CONCLUSION

We affirm Nowacki's convictions for forgery and making a false or misleading statement to a public servant.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.